Shutts, Appellant, v. Siehl et al., Appellees.

(No. 2513—Decided June 5, 1959.)

*Mr. James C. Baggott* and *Mr. Emerson H. Buckingham,* for appellant.

*Messrs. Pickrel, Schaeffer & Ebeling, Mr. William H. Selva* and *Mr. Charles J. Chastang,* for appellees.

Crawford, J. The plaintiff, appellant herein, brought this action against Dr. Donald Siehl, an osteopathic surgeon specializing in orthopedics, and the Dayton Osteopathic Hospital, doing business as Grandview Hospital, appellees herein. His complaint is that defendant Siehl, after performing a successful operation on his left knee, consisting of arthotomy and excision of medial semilunar cartilage, applied a plaster of paris splint and elastic bandages to his left leg in such manner as to cause pressure upon his left heel, resulting in great pain, a decubitus

ulcer, permanent impairment of the tendo calcaneus or Achilles tendon, and limitation of motion in the foot; and that, despite numerous and specific complaints, neither the employees of the hospital nor the surgeon took the proper and necessary steps to avoid, relieve or cure the condition.

At the close of plaintiff's evidence a motion of the hospital for judgment in its favor was sustained, a verdict was directed, and judgment was entered accordingly.

After the close of all the evidence, the case against the defendant Siehl was submitted to the jury, which disagreed and was discharged. Thereafter, upon motion of defendant Siehl, the court entered judgment in his favor and denied plaintiff's motion for new trial.

There are 11 assignments of error. We shall begin with those which appear most vital.

The first error assigned was sustaining the motion to direct a verdict in favor of the hospital.

Plaintiff entered the hospital on February 16, 1956, underwent surgery on February 17, 1956, and returned home on February 25, 1956.

In order to determine whether or not the employees of the hospital were negligent it becomes important to define their duties. According to the record, Dr. Siehl was in charge of the operation, including the application of the splint and the usual post-surgical care. Plaintiff says he made repeated complaints of the pain in his heel to hospital employees as well as to Dr. Siehl. The hospital records show some complaints, although fewer than plaintiff claims to have made. Nevertheless, the record discloses that Dr. Siehl was notified by employees of the hospital of some such complaints, and, in response thereto, did give them some attention and made examinations of the heel; that he made one such examination just prior to plaintiff's leaving the hospital on February 25th and found nothing wrong.

Plaintiff claims that only by removal or adjustment of the splint and accompanying bandages could his injury have been detected and relieved. The record shows no duty or authority on the part of the hospital or its employees to perform such acts.

In the testimony of both the plaintiff and his wife, Barbara Shutts, there are references to the things which the hospital employees, the interns and nurses, may and may not do. For exemple, Mrs. Shutts testified as follows:

"Q. Did she [the nurse] do anything about it? A. No. She couldn't. She said it would be up to the doctor to do something about it. * * *

" * * *

"A. Well, I went and got the nurse and she went and got an intern and he came in and moved the foot from one position to the other. That was all he could do."

The plaintiff testified:

"Q. You asked the doctors to loosen the Ace bandage? A. I believe I asked the interns to do that and they couldn't do that. They had to get permission from the doctor to do something like that."

Despite this notice that the authority of the hospital employees might be limited, plaintiff produced no evidence that they had authority to do the things he claims they neglected to do.

It is argued that the hospital employees assisted Dr. Siehl in the surgery and in the application and reapplication of the splint and that some of them wrote orders in the hospital record for him. But it is clear from the evidence that all these acts performed by hospital employees beyond their regular duties were done under the authority and upon the instructions of Dr. Siehl. Therefore, the hospital cannot be held liable for any alleged negligence in the performance of such services directed by the physician and surgeon in charge of the patient.

The trial court, in his opinion, appropriately cited the following cases for their bearing upon this subject: *Halkias* v. *Wilkoff Co.*, 141 Ohio St., 139, 47 N. E. (2d), 199; *Scharf, Admx.*, v. *Gardner Cartage Co.*, 95 Ohio App., 153, 113 N. E. (2d), 717.

In view of the distinctly separate fields of responsibility of the attending physician and surgeon on the one hand and of the hospital employees on the other, the principle of *res ipsa loquitur*, which is argued by plaintiff, cannot apply. See definition, 29 Ohio Jurisprudence, 631, Negligence, Section 153.

The evidence fails to disclose the breach of any duty on the

part of the hospital or its employees. The several cases cited wherein there was some breach of duty by a physician or hospital are not in point as to this defendant. The directed verdict and judgment in its favor were proper.

The tenth assignment of error was the sustaining of defendant Siehl's motion for judgment notwithstanding the disagreement of the jury; and the eleventh assignment was the overruling of plaintiff's motion for a new trial.

According to the evidence, plaintiff suffered a serious decubitus ulcer on his left heel, and such condition was in all probability caused by pressure from the splint. Dr. Siehl signed a hospital record (made after plaintiff's readmittance for treatment of the heel), containing these words: "Gross pathology: Decubitus type ulcer of left heel resulting from pressure of a posterior splint following knee joint surgery * * * ."

The evidence strongly indicates that the ulcer was the proximate result of negligence. If so, the question of whose negligence caused it becomes crucial.

Plaintiff contends that the splint was not properly applied in the first instance by defendant Siehl; that said defendant gave inadequate attention to plaintiff's complaints and made only a few casual and superficial examinations. When the splint was ultimately removed a week after plaintiff's return home it was discarded and is not in evidence. Plaintiff's father testified that there was a lump in it at the point where the pressure had existed.

The evidence indicates that on occasions when defendant examined the heel he did not remove the splint, which he claims was unnecessary to such examinations. Defendant says the ulcer did not exist, at least in visible or palpable form, at the time plaintiff left the hospital on February 25.

Defendant contends that plaintiff's own negligence proximately caused or contributed to cause the ulcer.

Plaintiff's evidence is that when he left the hospital on February 25 defendant instructed him to remove the splint one week later, and prescribed analgesic pills; that he told plaintiff he was leaving for a Florida vacation on March 1st, and that if plaintiff experienced any difficulty he should call him or his of-

fice. Plaintiff says severe pain in the heel persisted, at least intermittently, while he was in the hospital and after his return home.

The splint was removed by plaintiff's father on March 3rd, one week after his return home. Thereupon, the large, black ulcer on plaintiff's heel became visible and it emitted an offensive odor.

It appears that plaintiff's father then telephoned Dr. Siehl's office, but by that time the latter had departed from the city according to his previously announced plan. Defendant claims that in response to such call his office referred plaintiff to a Dr. Auwers, and arranged an appointment with him, but that plaintiff did not keep the appointment. Plaintiff says the office merely made an appointment for him to see Dr. Siehl after his return—says he had confidence in Dr. Siehl and therefore waited for him.

In determining the question of contributory negligence we must consider all attendant circumstances. Plaintiff testified that this was his first experience with such surgery and the use of such a splint and that, despite his repeated and insistent complaints of pain in his heel, Dr. Siehl, after making an examination on February 25th, the day he left the hospital, told him there was nothing there and that the supposed trouble was "in my imagination." He said that during the interval between the removal of the splint and Dr. Siehl's return, plaintiff and his family pursued a practice of daily cleansing of the heel and frequent changing of bandages.

In considering this question of plaintiff's contributory negligence, two periods of time may be considered: The one before the removal of the splint and the discovery of the large black spot on the heel, and second, that following such discovery. It is conceivable that a jury might find plaintiff guilty of negligence in not securing prompt medical help after this discovery, but free from negligence before. If it were so found, defendant would not thereby be relieved of possible liability incurred for damages already accrued.

There is conflict in the evidence as to when a discernible odor first emanated from the ulcer, whether before or after plaintiff's discharge from the hospital on February 25th. The

fact in this regard could have a bearing upon the questions both of defendant's negligence and of plaintiff's contributory negligence.

The case of *Ayers* v. *Woodard, Sheriff*, 166 Ohio St., 138, 140 N. E. (2d), 401, cited in the briefs, declares that the test to be applied by the court in granting judgment notwithstanding the verdict is the same as that to be used in ruling upon a motion for a directed verdict. Therefore, the same test must necessarily be applied in our present case where the jury disagreed.

Following the rule thus declared by the Supreme Court, and considering the evidence most strongly in favor of the plaintiff, we find support for his side of the case upon which reasonable minds may reach different conclusions.

Hence it is our view that the evidence required determination by a jury of the questions of defendant's negligence, plaintiff's negligence, and causation, and that it was error for the court to find as a matter of law that plaintiff was guilty of negligence which proximately caused the condition of which he complains.

The trial court elicited from the jury after its discharge what he called certain "academic information" which is contained in the record. It appears that in dealing with certain special interrogatories ten jurors considered defendant negligent for reasons not shown in the record, eight considered plaintiff negligent, and apparently seven thought plaintiff's negligence proximately caused his injury.

While this information proves nothing, it might tend to suggest the correctness of our view that upon the evidence presented there was ground for reasonable difference of opinion.

Inasmuch as the judgment against the defendant Siehl was not entered upon a verdict, the assignments of error (Nos. 4 through 8) which pertain to the general and special charges and instructions given and rejected, and the submission of special interrogatories, became moot.

Assignment of error No. 2 complains of the exclusion of evidence in the cross-examination of the defendant Siehl. The court, upon objection, denied plaintiff's counsel the use of enlarged reproductions of certain portions of the hospital records

which were in evidence. No actual evidence was thereby excluded, but counsel was merely denied the privilege of pursuing the method of presentation and emphasis which he desired. Also, the court sustained an objection to a question which would have required Dr. Siehl to compare the placing of a rock upon a garden hose and pressure upon blood vessels, the court observing that the analogy was not sufficiently close. The correctness of such rulings rests in the sound discretion of the court, and we find no abuse of that discretion.

Plaintiff's counsel endeavored to elicit from Dr. Siehl a comparison of the condition of plaintiff's heel with a condition or conditions photographed in a recognized medical book. Objections to this procedure were sustained, the court observing that he could "see no point in discussing the medical aspects of some other expert [case ?] which the jury is not required to decide." We perceive no error or abuse of discretion in this ruling. Besides, as plaintiff observed in his brief, defendant was later permitted, without objection, to answer the question as to one of the two similar photographs referred to.

Another complaint appears to pertain to certain dates in the hospital record referred to in the cross-examination. Plaintiff's counsel was not unduly circumscribed in this connection.

The only remaining complaint under this assignment of error was that when plaintiff's counsel was cross-examining Dr. Siehl from the Grandview Hospital record and Dr. Siehl stated the practice of nurses in making such records in hospitals generally, he was asked whether he was familiar with the practice of other hospitals in this community. Objection to that question was sustained. The question does not appear to have an important bearing upon any material issue in the case.

We find no error prejudicial to the plaintiff in assignment No. 2.

The court properly and reasonably allowed both defendants, as parties adverse to plaintiff, to cross-examine plaintiff and his witnesses (specification No. 3). The propriety of such procedure is discussed in 42 Ohio Jurisprudence, 327, Witnesses, Section 325; 58 American Jurisprudence, 341, Witnesses, Section 614; 98 Corpus Juris Secundum, 197, Witnesses, Section 402.

It appears that plaintiff joined in the motion to discharge the jury after many hours of deliberation and disagreement. This serves to waive his complaint that the discharge of the jury was error prejudicial to him (assignment No. 9).

That part of the judgment for the defendant hospital is affirmed. That part of the judgment for the defendant Siehl is reversed and the cause is remanded for further proceedings according to law.

Judgment affirmed in part and reversed in part.

WISEMAN, P. J., and KERNS, J., concur.