Evelyn M. Drewick, Plaintiff, v. Republic Steel Corporation, et al., Defendants.
Interstate Terminals, Inc., Third Party Plaintiff, v. Republic Steel Corporation, Third Party Defendant.

Gen. No. 50,661.

First District, Fourth Division.

November 3, 1967.

Van Duzer, Gershon & Jordan, of Chicago (Louis Gershon and Horace W. Jordan, of counsel), for appellant.

Asher, Greenfield, Gubbins and Segall, of Chicago (Irving M. Greenfield and Irving D. Levin, of counsel), and Stevenson, Conaghan, Hackbert, Rooks and Pitts, of Chicago (Harlan L. Hackbert, of counsel), for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from an action originally brought by Evelyn M. Drewick, plaintiff, against Interstate Terminals, Inc., Republic Steel Corporation, and Henry Pfutzenreuter & Sons, defendants. The action was brought to

recover damages for personal injuries alleged to have resulted when the plaintiff, on April 18, 1955, was struck by a window which fell or was blown from the building occupied by her employer, Interstate Dispatch, Inc. Interstate Terminals, Inc. filed a third-party action for indemnity against Republic Steel Corporation and Henry Pfutzenreuter & Sons. The actions were tried simultaneously.

At the close of plaintiff's case the trial court directed a verdict in favor of Henry Pfutzenreuter & Sons. Interstate Terminals, Inc. then dismissed its third-party complaint against that concern. The jury returned a verdict for the plaintiff against Interstate Terminals, Inc., in the amount of $105,500, and found in favor of Republic Steel Corporation on the original third-party complaint. This appeal is taken by Interstate Terminals, Inc. from the judgments on these verdicts. The evidence discloses the following facts:

On the night of April 18, 1955, the plaintiff finished her work as a billing clerk at about 9 p. m., and left the building occupied by her employer, Interstate Dispatch, Inc., at 3636 South Western Avenue, Chicago. She was walking towards her car which was parked against the north wall of the building, and as she passed under a row of windows on the north wall, a steel ventilator window sash fell and struck her on the head and shoulders, causing the injuries complained of. After being struck by the window she was dazed but did not lose consciousness; she was helped back into the office and the police were called. She was then taken to the office of Dr. Mirmelli, at which time she was bleeding profusely from cuts on the face and left shoulder which had been cut to the bone. The doctor applied first-aid treatment and she was then taken to the Mother Cabrini Hospital where she remained under the care of Dr. Mirmelli until May 7, 1955. He continued to see her up to September 8, 1955, by which time the wounds had healed but elevated scars were left, and he advised

plastic surgery. Plastic surgery was performed by Dr. Paul Greely. She later had treatments from Dr. Piersynski, who found permanent injuries in her body. Dr. Mirmelli examined the plaintiff on April 12, 1961, and found two scars on the cheek which were of a permanent nature, and other permanent scars on her body.

Interstate Dispatch, Inc. was an interstate carrier of freight by motor vehicle. About 1947, Interstate Terminals, Inc. was incorporated, and Interstate Dispatch, Inc. became the owner of the entire corporate stock of Interstate Terminals, Inc. Interstate Terminals was organized originally to buy land and construct a building in Chicago for use as a general office and Chicago terminal for Interstate Dispatch. Interstate Terminals then purchased a parcel of vacant land at 3636 South Western Avenue, and engaged the firm of Belli and Belli to prepare plans and specifications for the building. The contract for construction was awarded to Henry Pfutzenreuter & Sons. The building was completed by Pfutzenreuter and approved by the architects, then turned over to Interstate Terminals. The entire land and building were then leased by Interstate Terminals to Interstate Dispatch under a written long-term lease dated July 1, 1948, which lease was still in effect at the time of the accident on April 18, 1955, and Interstate Dispatch was occupying the premises, pursuant to the lease. By its terms the lease obligated Interstate Dispatch, as lessee, to maintain and keep the premises in repair. The window involved in this suit was located in the area used by Interstate Dispatch for dispatching and billing.

From the time it was incorporated to the date of the accident some of the officers of Interstate Terminals were also officers of Interstate Dispatch; thus at the time of the accident, the president of both corporations was M. E. Holt, and the secretary of both companies was Russell E. Berry, an attorney. Mr. Holt's office, as president of Interstate Dispatch, was in the general office section of

the building, where he kept necessary records of Interstate Terminals.

The window in question was a commercial projected steel sash window, ordered by Pfutzenreuter from Truscon Steel Company, which is now a division of Republic Steel. The windows were fabricated, sold and delivered to the job by Truscon, then installed by Harry Pasco, pursuant to a subcontract with Truscon. The window involved in this suit was one of the original windows installed at the time the building was constructed. The top and bottom sections of glass in the unit are fixed and stationary. The middle section can be opened by pushing it out with a handle at the bottom of the section, and is called a ventilator. On each side of the ventilator is a steel arm, one end of which is fastened to the ventilator frame by rivets. The other end is fastened to a friction shoe which slides up and down in a channel at the side of the frame. This friction shoe serves to hold the window open at the desired position. This middle ventilator section is the part of the window which fell out at the time of the accident.

The ventilator section was inspected on the morning after the accident by A. C. Hrubes, director of safety for Insterstate Dispatch. Mr. Hrubes observed that the rivets were broken or sheared off on both arms at the point where the arms were fixed to the ventilator section. He noticed that at the point where the rivets were sheared the metal was very shiny; there were no rust marks or discoloration, and the metal was porous.

The theory of defendant-appellant, Interstate Terminals, is as follows:

1. The premises were leased by Interstate Terminals to Interstate Dispatch, and by the lease that company was obligated to repair and maintain the premises; therefore, as a matter of law, Interstate Terminals was not liable for the injury.

191

2. Under the terms of the lease and under the facts, Interstate Terminals did not have control and management of the premises where the accident occurred, and consequently the doctrine of res ipsa loquitur did not apply against it, and the court erred in submitting the case against Interstate Terminals to the jury on that doctrine and giving the jury an instruction thereon.
3. The court failed to recognize Interstate Terminals as a corporate entity separate and distinct from Interstate Dispatch.
4. The defendant, Interstate Terminals, was deprived of a fair and proper trial.
5. The verdict and judgment in favor of the plaintiff is grossly excessive.

The plaintiff's theory is that:

1. Defendant, Interstate Terminals, never actually gave up possession and control of the building from which the window fell and struck plaintiff.
2. The window and appurtenances thereto were defective at the time of the construction of the building.
3. This defendant was charged with knowledge of such defects.
4. There was conclusive evidence of defendant's ownership, possession and control of the building out of and from which the window fell, and that these were all questions of fact which were properly submitted to the jury.
5. The doctrine of res ipsa loquitur was properly applied in this case in that the defendant, Interstate Terminals, had within its knowledge and control evidence which the plaintiff did not possess and could not conveniently obtain, and that the occurrence was certainly one which does not happen in the ordinary course of events; therefore, there

was a strong presumption or inference of negligence properly submitted to the jury. This presumption or inference was not rebutted by defendant.

6. The purported lease—even if there was one—providing for the maintenance and repair of the premises by Interstate Dispatch, did not absolve the owner, Interstate Terminals, from liability for the injury to plaintiff for a defect existing at the time of leasing.

7. The defendant's position that it is absolved from liability by virtue of the purported lease to Interstate Dispatch is not tenable in that the lease expressly provides that the lessor shall repair immediately any damage to the demised premises occasioned by its own acts, and that the incorporation in this building of a defective window and defective rivets was the defendant's own act.

We will first consider the case of Drewick v. Republic Steel Corporation. By an amended complaint Republic Steel was made a party to the original suit. It answered the amended complaint, and at the close of all the evidence a motion by Republic Steel for a directed verdict in its favor and against the plaintiff, was denied. The jury returned a verdict in favor of Republic Steel and against the plaintiff, Drewick.

Before us Republic Steel argues that in its notice of appeal Interstate Terminals did not appeal from the judgment in favor of Republic Steel in the original complaint. In its reply brief, defendant Interstate Terminals agrees with Republic Steel and says that the verdict and judgment in favor of Republic Steel was not challenged either in its post-trial motion or on this appeal. Consequently, the matter is not before this court.

The next question to be considered is the appeal of Interstate Terminals from the judgment against it. In this court defendant argues that the fact that Interstate

193

Dispatch owned all of the Interstate Terminals stock and that many officers of both corporations were the same, is immaterial and that the two corporations are and must be considered as separate entities. In other words, there can be no piercing of the corporate veil. Citing 18 Am Jur2d, page 564, § 17; and Dregne v. Five Cent Cab Co., 381 Ill 594, 602, 46 NE2d 386, where the court said:

> "A corporation is an entity separate and distinct from its shareholders and, generally, from other corporations with which it may have relations. Indeed, the fact that the shareholders of two corporations are identical does not, necessarily, mean that the two corporations are to be considered as a single entity."

Also see Superior Coal Co. v. Department of Finance, 377 Ill 282, 36 NE2d 354, where the court made the same finding.

If it were held that this court should ignore the separate corporate theories of Interstate Terminals and Interstate Dispatch the plaintiff still could not recover since she was injured in an accident arising out of and in the course of her employment with Interstate Dispatch. She proceeded against Interstate Dispatch under the Workmen's Compensation Act and received a lump-sum settlement. Under those circumstances she would be barred from any common-law action for damages against Interstate Dispatch. If Interstate Dispatch and Interstate Terminals were considered as one corporation, the common-law action would then also be barred as against Interstate Terminals.

The defendant, Interstate Terminals, argues that by the terms of the lease Interstate Dispatch had the sole obligation to repair and maintain the premises. The lease does not appear in the abstract; consequently, it was necessary for this court to determine its terms by going to the record. Section 9 of the lease reads as follows:

"Lessee covenants and agrees during the term created hereby to keep in good order and repair, inside and out, all buildings, roofs and structures on or appurtenant to said demised premises, and all equipment thereof, including but not being limited to, all engines, boilers, pipes, plumbing, wiring, gas and steam and electrical fittings and all other equipment thereof, and Lessor covenants and agrees to repair immediately any damage to the demised premises occasioned by its own acts."

It has been repeatedly held that the tenant or occupant of leased premises, and not the owner, is responsible for injuries resulting from the defective condition of the demised premises. Jackson v. 919 Corp., 344 Ill App 519, 101 NE2d 594; Carson v. Weston Hotel Corp., 351 Ill App 523, 115 NE2d 800; and Soibel v. Oconto Co., 299 Ill App 518, 20 NE2d 309. In the latter case the law is stated to be that where premises are leased and the lessee takes possession, in the absence of concealment or fraud by the landlord as to some defect known to him and unknown to the tenant, the tenant assumes the risk of personal injury from defects.

In the case before us, under the rule as laid down, there is no evidence that there was any concealment or fraud on the part of Interstate Terminals as to any defect in the window, if such there was. We find that the lease between the parties was controlling.

The plaintiff argues that under the terms of the lease the defendant, Interstate Terminals, would be liable because of the provision that it, the lessor, would repair immediately any damage to the demised premises occasioned by its own act. However, there is nothing in the record to show that the defect in the screws on the window, if there was such defect, was caused by Interstate Terminals. Plaintiff further argues that the covenant by lessee, Interstate Dispatch, to keep the premises

in good order of repair related only to any state of disrepair that was occasioned or resulted after the date of the execution of this purported lease and not for any defect that existed at the time of the leasing of the premises; therefore, if the defect—provided there was a defect—had been existing at the time the premises were leased, the duty was upon the defendant, Interstate Terminals, to make the repairs. However, there is no testimony in the record that the window was in a state of disrepair at the time it fell. The only evidence offered in support of this theory is that the window fell and the rivets had broken.

Plaintiff also relies on the theory that, assuming there was a valid lease under which Interstate Terminals "actually gave up all control and all right to possession of the premises, and in fact was not actually in possession of any portion thereof and did not conduct any of its business therefrom, . . . the defendant nevertheless would be liable to the plaintiff for the defective window . . . in light of the provisions of paragraph 9 of said lease . . ." In support of that argument plaintiff cites Klonowski v. Crescent Paper Box Mfg. Co., 217 Ill App 150. However, in that case the court held that there was sufficient evidence to show that certain steel beams were of insufficient strength. That is not true in the case before us.

Plaintiff argues that Interstate Terminals was in control of the building at the time of the accident. Considering the fact that the president of Interstate Terminals was the same person who was president of Interstate Dispatch; the fact that he had an office in the portion of the building from which the window fell; and that he had in his desk certain papers pertaining to the business of Interstate Terminals, are not sufficient to establish control on the part of the latter.

The plaintiff also proceeds on the theory that the doctrine of res ipsa loquitur is applicable. The defendant,

196

Interstate Terminals, challenges that theory on the grounds that it did not have sole and exclusive control or possession of the premises, and that there was no evidence in the record from which the jury could find that to be a fact.

The defendant argues that the doctrine of res ipsa loquitur was improperly applied and that the instruction given by the court on that question was prejudicial and constituted reversible error. In Metz v. Central Illinois Electric & Gas Co., 32 Ill2d 446, 448, 207 NE2d 305, the court stated:

> "When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. [Citing cases.] This in essence is the doctrine of res ipsa loquitur, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant."

The court further stated:

> "Whether the doctrine applies in a given case is a question of law which must be decided by the court, but once this has been answered in the affirmative, it is for the trier of fact to weigh the evidence and determine whether the circumstantial evidence of negligence has been overcome by defendant's proof."

In Jackson v. 919 Corp., 344 Ill App 519, 101 NE2d 594, the court held that the doctrine of res ipsa loquitur

is not applicable where two or more persons exercise joint control. The court also held that the doctrine may be invoked only upon general charges of negligence, and where the plaintiff alleges and seeks to prove specific acts of negligence there is no room for the doctrine. In the instant case the plaintiff did make specific allegations of negligence in Count I against the defendant, Interstate Terminals, and these were submitted to the jury. The jury was instructed on them in the instruction on the issues.

In answer the plaintiff cites and quotes from Ryan v. Zweck-Wollenberg Co., 266 Wis 630, 64 NW2d 226, which case quoted from Prosser on Torts, page 298, where it is stated: "All that is necessary is that the defendant have exclusive control of the factors which apparently have caused the accident; . . ." We do not believe the evidence in the instant case brings the plaintiff within that rule.

 The doctrine of res ipsa loquitur was not applicable to the case before us. Without the application of that doctrine it would be necessary for the plaintiff to prove a physical defect in the window. There is no such proof in the record. Furthermore, there is testimony in the record, from plaintiff's witnesses, that there were high winds prevailing the night of the injury, and that the window "blew out."

The plaintiff also apparently argues that without the application of the rule of res ipsa loquitur physical evidence of improper construction—either a defect in the window or the rivets holding it in place—was not necessary since the falling of the window raised a reasonable inference of such defect and negligence. In support plaintiff cites Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847, which case is inapplicable because the suit was brought against a manufacturer of an alleged defective product.

■ The latest case on that subject is Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182, where at 623 the court said that in such a suit the imposition of strict liability does not make the manufacturer an absolute insurer. The court said: "The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control. See Tiffin v. Great Atlantic & Pacific Tea Co., 18 Ill2d 48." We do not think the Lindroth case can be properly applied, nor any cases dealing with the question of defective products in the original case. Even if that could be applied the rule stated in Suvada is controlling, and no evidence was offered in the instant case to show that the condition was an unreasonably dangerous one or that it existed at the time it left manufacturer's control.

The defendant, Interstate Terminals, also argues that since the court directed a verdict in favor of Pfutzenreuter, it must necessarily be determined as a matter of law that the plaintiff had failed to prove any defect in the window, or that if there was any defective condition it could not have been discovered by any reasonable inspection. In arriving at its verdict in favor of Republic Steel, the jury must necessarily have found that the evidence failed to prove any defect in the window at the time of delivery and installation, or that Republic Steel was not negligent in manufacturing and selling the window, even if it did have a defect. Consequently, defendant argues that the verdict against Interstate Terminals is wholly inconsistent with the directed verdict for Pfutzenreuter and the jury verdict for Republic Steel, and that the court erred in refusing to set aside the verdict in favor of the plaintiff against Interstate Terminals on the post-trial motion.

In support of this contention the case of Martin v. 1600 Hinman Ave. Corp., 339 Ill App 126, 88 NE2d 892, is cited. This was a case where the plaintiff sued the defendant, 1600 Hinman Avenue Corp., and Public Service Company of Northern Illinois. Hinman owned, maintained and operated the apartment building in which plaintiff and her husband were tenants. Hinman had installed in the apartment a new gas stove for cooking. The plaintiff was severely burned by an explosion of gas as she was lighting the oven. Plaintiff brought suit on the theory that she had complained to Hinman concerning the improper adjustment of the gas attachments to the stove and that Public Service, by and through its servants, at the request of Hinman, caused the stove to be improperly adjusted. Each defendant answered, denying the repair or adjustment of the stove. A judgment was entered in behalf of Public Service, and no appeal was taken from that judgment. A judgment was entered on a verdict of guilty against Hinman. In this court Hinman argued that the court should have granted it a new trial inasmuch as its liability, if any, was under the doctrine of respondeat superior for the negligence of Public Service in repairing the plaintiff's stove, and that the jury having found Public Service not guilty, the verdict against Hinman could not stand. The plaintiff did not contest that rule; however, she attempted to show that Public Service was, for the purpose of repair and adjusting the stove, the servant of Hinman. On that question the court held against her and held that the judgment for Public Service barred action against Hinman, and reversed the judgment against Hinman.

It would appear that that rule should be applied in the instant case. There was no proof that the window was defective at the time it was sold by Republic Steel. The verdict and judgment in favor of Republic Steel, from which no appeal is taken, is controlling.

The plaintiff did not prove a cause of action against Interstate Terminals, and the judgment entered in favor of plaintiff and against Interstate Terminals must be reversed.

Since the judgment against Interstate Terminals is reversed, the judgment in favor of Republic Steel Corporation in the third-party suit brought by Interstate Terminals as third-party plaintiff, must be sustained.

The judgment entered in favor of Evelyn M. Drewick, plaintiff, against Interstate Terminals, Inc., defendant, is reversed, with judgment here in favor of said defendant.

The judgment on the third-party complaint in favor of Republic Steel Corporation, third-party defendant, and against Interstate Terminals, Inc., third-party plaintiff, is affirmed.

Reversed in part, affirmed in part.

ENGLISH, P. J. and DRUCKER, J., concur.