(No. 41133.—

Evelyn M. Drewick, Appellant, vs. Interstate Termi-
nals, Inc., Appellee.

*Opinion filed March 27, 1969.—Modified on denial of rehearing
May 27, 1969.*

ASHER, GREENFIELD, GUBBINS and SEGALL, of Chicago, (IRVING M. GREENFIELD and IRVING D. LEVIN, of counsel,) for appellant.

VAN DUZER, GERSHON, JORDAN & PETERSEN, of Chicago, (LOUIS GERSHON and HORACE W. JORDAN, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

A jury in the circuit court of Cook County returned a verdict in favor of plaintiff Evelyn M. Drewick and fixed her damages at $105,000 for injuries she sustained when a steel ventilator-window sash fell from a building owned by Interstate Terminals, Inc., (hereafter called defendant) striking her on the head and shoulders. The trial court entered judgment on the verdict and denied defendant's post-trial motions. The Appellate Court, First District, reversed that portion of the judgment holding defendant liable (97 Ill. App. 2d 187), and we granted leave to appeal.

Defendant, owner of the building from which the

window fell, is the wholly owned subsidiary of Interstate Dispatch and it leased the building to its parent corporation. The president and secretary of the parent and subsidiary corporations are the same persons and they have their offices in the general office section of the building. The plaintiff is an employee of the parent corporation.

Plaintiff sought recovery from Republic Steel Corporation, the manufacturer of the window; Henry Pfutzenreuter & Sons, the general contractor who accepted and installed the window; and defendant, owner and lessor of the building and window. The lessee was not made a party defendant because it is plaintiff's employer, her workman's compensation claim was allowed against it and her common-law action for damages against it was thereafter barred. There is, of course, no suggestion that the corporate veil between the lessor and lessee be pierced because this would also bar her claim against the lessor.

Plaintiff's complaint (filed prior to *Suvada* v. *White Motor Co.,* 32 Ill.2d 612) alleged that Republic Steel was liable because it negligently designed and manufactured the window; that Pfutzenreuter was liable because it negligently accepted and installed the defective window; and defendant was liable because it negligently accepted the building with the defective window. The plaintiff, in addition, specifically charged that defendant, as sole and exclusive owner, maintaining, supervising and controlling the premises, "knew, or by the exercise of reasonable care or diligence could or should have known that said steel sash, or that section therefrom that fell out of and from the north wall of said building was defective or that the component parts incorporated therein and which became an integral part of said sash or window were defective and that said supports or other component parts could or might crack, fracture, break and thereby cause said sash or window to give way under its weight and to fall out" and injure plaintiff. The trial court directed a verdict in favor of Pfutzen-

reuter and the jury found in favor of Republic Steel. She did not appeal from either of these findings against her.

Defendant contends that these findings are wholly inconsistent with the jury verdict returned against it. It is argued that in reaching these findings the court determined, as a matter of law, and the jury determined, as a matter of fact, that no defect or, at least, no defect discoverable by a reasonable inspection, existed at the time of manufacture and installation of the window. Because even under the product liability principles announced in *Suvada* v. *White,* proof of a defect is necessary to sustain recovery against the manufacturer or those in the chain of distribution, defendant concludes that the jury verdict against it cannot stand.

This argument ignores the fact that plaintiff's case against the defendant-owner was also submitted to the jury on the basis of *res ipsa loquitur.* If submission on this basis were proper, the apparent inconsistency of the verdicts in question is resolved since no attempt was made to apply the doctrine of *res ipsa loquitur* to the other party-defendants.

Assuming that the plaintiff was in the exercise of due care for her safety, two additional conditions must be established for the application of the doctrine of *res ipsa loquitur* : first, the accident must be the kind which does not ordinarily occur without someone's negligence; and second, the instrumentality which caused the injury must have been within the management or control of the defendant. (*Metz* v. *Central Illinois Electric and Gas Co.,* 32 Ill.2d 446, 448-450; *Erckman* v. *Northern Illinois Gas Co.,* 61 Ill. App. 2d 137, 145.) The purpose of this second condition is, of course, to limit the application of the doctrine to those cases where the negligence, if any, must reasonably have been that of the defendant. It is not enough for the plaintiff to show that she was injured because of the negligence of an unknown party. See Wigmore on Evidence, 1st Ed. 1905, sec. 2509.

Whether the doctrine applies in a given case is a question of law which must be decided in the first instance by the trial court. (*Metz* v. *Central Illinois Elec. and Gas Co.*) Once this decision is made, however, it becomes the function of the jury to weigh the strength of the inference of negligence arising from the facts in evidence. This inference does not vanish upon the introduction of contrary evidence by defendant but remains to be weighed with all the other evidence.

In the instant case, it is clear that plaintiff was not guilty of any contributory negligence. Likewise, it cannot be seriously disputed but that this is the type of accident which does not ordinarily occur in the absence of someone's negligence. A serious factual issue does exist, however, regarding the degree of control and management exercised by the defendant over the window which fell and struck the plaintiff.

The record discloses that defendant Interstate Terminals, Inc., was organized in 1946 or 1947 for the sole purpose of acquiring title to a certain parcel of real estate in Chicago and erecting a trucking terminal thereon. When completed, this terminal, consisting of an office, loading platform and a garage, was leased by defendant to Interstate Dispatch. This lease was still in effect at the date plaintiff sustained her injuries. The window which struck plaintiff was installed as part of the original construction of the office section of the building at a time when defendant had sole control and responsibility for the premises.

Under the terms of the lease, the lessee covenanted to "keep in good order and repair" all the buildings and equipment thereof on the demised premises while the defendant-lessor agreed "to repair immediately any damage to the demised premises occasioned by its own acts." Defendant also retained the right of access to the premises and to erect and maintain certain equipment not related to the office section of the building. In addition to the express terms of

this lease agreement, there was some evidence adduced indicating that a portion of the premises had been subleased back to defendant. No copy of such sublease was ever produced at trial.

Defendant did establish that it was the lessee who engaged the window cleaning company to routinely wash the window, that it was the lessee's employee who lubricated and otherwise maintained and operated the window and that it was the lessee who engaged the painters who had painted the window a few days prior to the accident.

On the other hand, Interstate Terminals did maintain an office for its president and its secretary on the demised premises. It did maintain on those premises record keeping and storage facilities. These facts tend to establish actual physical control by Interstate Terminals of at least a portion of the premises. Furthermore, the testimony about a separate sublease from Interstate Dispatch back to Interstate Terminals cannot go unnoticed. The logical inference from that testimony is that both corporations *intended* that Interstate Terminals should occupy and control some portion of the premises. Because the corporate officers have testified that the sublease cannot be found, we are unable to determine what limitations, if any, were imposed by that sublease on the area to be used and the conditions of the duty to maintain the premises. Evidence had been adduced that the defendant actually occupied and used part of the premises, that this use was with the knowledge of and by the consent of the lessee, and that it may well have been pursuant to a sublease.

It has long been the law of this State that a lessor (or landlord) is liable for injuries which are sustained on premises, or portions thereof, retained in the lessor's control. (Cf. 24 I.L.P., Landlord and Tenant, 490-491.) In this case the injury occurred while the plaintiff was in a parking lot, apparently used in common by the lessor and

the lessee. The instrumentality which caused the injury, the window, fell from the office portion of the building wherein both the lessor and the lessee maintained office and storage space. Clearly, at the time of the injury the plaintiff was not possessed of the information necessary to establish who was in legal control of the premises. Since that time the plaintiff has done all within her power to supply the facts as to that issue. The defendant, however, is or should be able to show who was in legal control at the time of the accident. And yet, defendant has failed to produce the sublease subpoenaed by the plaintiff. Defendant never explained the absence of that document; nor did defendant demonstrate to the satisfaction of the court that a lessor who remains in possession of a portion of the premises has relinquished its duties to persons lawfully on those premises.

The unexplained retention by the lessor of the use and occupancy of portions of the building, and the existence of a sublease of some undefined portion of the building, raise factual questions which were beyond the power of the plaintiff to answer. The problem faced by the trial judge in these unusual circumstances was whether to decide these factual questions himself or to submit the entire case to the jury under a cautionary instruction.

On the basis of this evidence and the record as a whole, we hold it was not error for the trial court to send the case to the jury on a *res ipsa* instruction, particularly where the jury was expressly instructed that control on defendant's part was a prerequisite to its liability.

The function of the theory of *res ipsa loquitur* is to create an inference of negligence from otherwise inexplicable facts. The application of the theory in this case resulted in a finding of negligence by the jury. The verdict returned by the jury indicates clearly that it did not believe that the instrumentality in question was defective when it was installed. The verdict also establishes that the jury was convinced that the injury would not have occurred except for

the negligence of the owner-lessor in the intervening period prior to the injury.

The sole question remaining is whether the jury's verdict was against the manifest weight of the evidence. The only explanation of the accident offered by defendant was the testimony of one witness that a "high wind" was present in the area of the plant on the night in question. We cannot say that this testimony outweighs the inference of negligence created by other facts of record; therefore, the jury's verdict must be sustained.

Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County entered upon the above jury verdict is reinstated.

*Appellate Court reversed; circuit court affirmed.*