(No. 73-CC-0368–

IDA M. RIVERS, Individually and as Administrator of the Estate of Ruth Dianna Rivers, Deceased, and on behalf of Roy David Rivers, a minor, and Elizabeth Louise Rivers, a minor, Claimants, *v.* THE STATE OF ILLINOIS, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Respondent.

*Opinion filed July 31, 1979.*

WILLIAM STANLEY WHITE, for Claimants.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimants filed a claim for $25,000.00 against the State for the wrongful death of Ruth Dianna Rivers. Jurisdiction of this wrongful death case for all Claimants is vested with this Court pursuant to section 8(d) of The Court of Claims Act. Ill. Rev. Stat. 1971, ch. 37, par. 439.8(d).

The Claimants in this case are mother, minor brother, and minor sister of Ruth Dianna Rivers, deceased. On February 11, 1971, the Circuit Court of Sangamon County, Illinois, in Case No. 71-J-18 entered an order finding the decedent, Ruth Dianna Rivers, to be a minor child in need of supervision, and by the same order entered in that case, declared the minor child to be a ward of the Court and appointed the Illinois Department of Children and Family Services as guardian of Ruth Dianna Rivers. The Illinois Department of Children and Family Services in due course placed the said minor with a licensed foster

home in Taylorville, being the home of Wilmer Brookens and his family.

On May 17, 1971, the child disappeared and was later found dead on or about July 21, 1971. The cause of decedent's death is unknown.

Claimants argue two theories of liability. First, that the State was guilty of specific negligence in failing to keep a proper watch and protection over the minor child in light of the child's history of running away. Second, that the doctrine of *res ipsa loquitur* applies due to the fact that the State had exclusive control and management of the minor child, and that the child's unexplained death occurred after an incident of running away.

Respondent maintains that the degree of supervision exercised with respect to the minor child was adequate, and that the State did everything in its power to provide Dianna Rivers with the "kind of family environment that was so tragically lacking in the home provided by her own mother."

Claimants allege that Dianna only saw her caseworker six times during the approximate three and one-half months stay at the Brookens' home, although there were other contacts between the foster parents and the caseworker regarding Dianna's welfare. Claimants do not define the kind or extent of additional supervision which Claimants argue could have prevented this tragic episode. Claimants infer in their argument that perhaps Dianna should have been placed in a closed institution. There is no proof in the record that upon currently prevailing standards, Dianna's case called for such a drastic remedy, notwithstanding the information possessed by the Illinois Department of Children and Family Services with respect to Dianna's propensity to run away. In effect, Claimants ask this Court to accept the

proposition that the care and supervision that was given was not enough but Claimants are unwilling to state what principles, guidelines or standards in the care and control of Dianna Rivers were violated by the action of the State.

Claimants rely on *Kent, et al. v. State of Illinois*, (1963), 24 Ill. Ct. Cl. 321, and *Chifton, et al. v. State of Illinois* (1963), 24 Ill. Ct. Cl. 404 for the proposition that the State was negligent in the placement of the decedent.

In *Kent, supra,* an inmate classified as "insane" escaped confinement at the Galesburg State Research Hospital and took an automobile belonging to Claimants, thereafter totally destroying the car in an accident. In *Kent* the State was found to be negligent where there were only two guards enforcing institutional security duty over an area of 159 acres, constituting the hospital property. Further, the patient had evidenced in the past the desire to go home to his mother, and the authorities were well aware of this desire. It was further shown that about 45 inmates under confinement left the hospital each year without permission.

In *Clifton, supra,* Claimant's decedent was killed while institutionalized at Jacksonville State Hospital by another inmate. The evidence showed that the authorities knew of the assailant's history of violence and found the State liable in damages to the decedent's heirs.

Neither the *Kent* nor *Clifton* cases, *supra,* are persuasive in the case at bar. The principles announced in each of those cases apply peculiarly to situations in which the State has undertaken the institutional confinement of dangerous persons who have demonstrated that they represent a threat to others if left unconfined. Such is not the case at bar. The principles and standards of care, with respect to the State's responsibility in

dealing with dangerous personalities are historically more clear so that the Court is in a better position to judge whether or not there has been a breach of those principles which would impose liability upon Respondent. In the present case there is no such clarity of the standards of care which should be met by the State in caring for dependent, neglected or delinquent children in foster homes. Clearly, such children are not normally placed in confinement until they have shown themselves to be of a class such as the criminal and deranged persons who must be confined for the protection of others. There is no evidence in the record to indicate Dianna Rivers was such an individual, and that confinement would have been in the best interest of the public or of Dianna Rivers. The Claimants have not proved that the State was negligent.

Claimants also maintain the doctrine of *res ipsa loquitur* should be applied by this Court in the present case. In support of this theory, Claimants cite *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877. In *Drewick* a pedestrian had been injured by a window frame that had, without explanation, dropped onto the pedestrian from a building near where the pedestrian was walking. The Illinois Supreme Court stated that the function of the theory of *res ipsa loquitur* is to create an inference of negligence from otherwise inexplicable facts. Two conditions must be established for the doctrine to apply. First, the accident must be the kind which does not ordinarily occur without someone's negligence and second, the instrumentality which causes the injury must have been within the management or control of the defendant. These principles are not met in the case at bar. The "instrumentality" causing damage in the present case is completely unknown. The death of Dianna Rivers could as well have occurred as a result of a

felonious act of a criminal as from the voluntary acts of Dianna Rivers. Under the circumstances in this record it is possible that Dianna Rivers' death came about as the result of criminal acts as any other hypothesis that may be raised.

There is no showing in the record in this case that the State or its agents were negligent in the care and protection of Dianna Rivers. No standards of reasonableness or principles of conduct in exercising the obligation of the State toward Dianna Rivers were shown to have been breached, therefore there can be no finding of negligence against the State. The doctrine of *res ipsa loquitur* does not apply because it is impossible to judge the source or cause of death of Dianna Rivers. The Claimants have not met their burden of proving negligence by the State by a preponderance of the evidence. While the death of Dianna Rivers was tragic the State was not shown to have been responsible for her death. Therefore, the claim must be denied.