FRANK LOIZZO, Plaintiff-Appellant, *v.* ST. FRANCIS HOSPITAL *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 82—2733

Opinion filed January 17, 1984.

Smith & Munson, of Chicago, for appellant.

James G. Meyer, of Hogan, McNulty & Meyer, and Stanley J. Davidson, Douglas H. Momeyer, and Robert L. Martier, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Robert Marc Chemers, of Pretzel & Stouffer, Chartered, and Francis D. Morrissey, Thomas R. Nelson, Charles B. Lewis, and Mark L. Karasik, all of Baker & McKenzie, and Williams P. Dorr, Hugh C. Griffin, and William D. Frazier,. all of Lord, Bissell & Brook, and Richard C. Bartelt and Kathy Pinkstaff Saxton, both of Wildman, Harrold, Allen & Dixon, all of Chicago, for appellees.

JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Frank Loizzo, brought this action in the circuit court of Cook County to recover damages for personal injuries allegedly occasioned by a catheter which was negligently left in his body following surgery. All of the defendants had rendered medical care to the plaintiff for treatment of his heart condition, but they were not all involved concurrently. Plaintiff filed a complaint, which was later amended to include all of the defendants, under the *res ipsa loquitur* doctrine. The trial court, finding that the requisite element of exclusive control of the catheter had not been established, granted each of defendants' motions for summary judgment.

On March 30, 1977, while preparing to perform a surgical procedure known as a left and right cardiac catheterization with coronary

angiogram at defendant St. Francis Hospital in Evanston, defendants Dr. Edward Pinsel and Dr. A. Jerald Rothenberg discovered a 12-inch size 6 French catheter in plaintiff's body. The catheter extended from the iliac vein into one of the chambers of plaintiff's heart. The plaintiff underwent a thoractomy on April 1, 1977, to remove the catheter.

Plaintiff had been previously hospitalized at defendant Northwest Community Hospital on December 16, 1976, December 25, 1976, and March 21, 1977, for treatment of severe chest pain. During these hospitalizations he was under the care of defendants Dr. Miles Lynch, Dr. John L. Lynch, and Dr. Joseph E. Franger. His condition was diagnosed as a myocardial infarction and coronary insufficiency. On the latter two occasions plaintiff was admitted through the emergency room of the hospital which was staffed by physician-employees of defendant Medical Emergency Services Associates (MESA).

The amended complaint, stated in five counts, alleges that each of the defendants was guilty of one or more of the following negligent acts or omissions:

"(a) Caused a certain radio-opaque [sic] catheter, size 6 French, approximately 12 inches long to be placed into the plaintiff's body; whereupon, it was not removed;

(b) Caused the aforesaid catheter to become broken and displaced;

(c) Allowed a portion of the catheter to remain in the plaintiff's body after his discharge from the hospital;

(d) Used the aforesaid catheter in a manner not intended by its manufacturer;

(e) Was otherwise careless and negligent."

Each of the defendants denied placing the catheter in the plaintiff's body and denied knowledge of the identity of the person or persons who inserted the catheter. The doctors Lynch and Franger stated that they did not place any catheters in plaintiff's body. Doctors Pinsel and Rothenberg inserted several catheters, but claimed that they had never used the type of catheter they found in plaintiff. Hospital personnel from each of the defendant hospitals submitted affidavits asserting that the catheters of the type found were never purchased or used by their employers. Doctors Leslie Webber and Lawrence Cohen, MESA's employees who treated plaintiff at Northwest Community Hospital's emergency room, claimed not to have inserted any catheters into plaintiff. Although plaintiff was billed by Northwest Community Hospital for a central venous pressure (CVP) monometer unit, Dr. Miles Lynch asserted that plaintiff's treatment did not include a CVP monometer unit. There was further evidence that

the catheter in a CVP monometer unit is small and clear, unlike the catheter found in plaintiff's body.

The amended complaint does not allege that plaintiff's hospitalizations at St. Francis and Northwest Community hospitals were the only occasions in which he was treated at a hospital or in which he underwent invasive procedures. To the contrary, plaintiff had been treated previously at Norwegian American Hospital for a bladder ailment. Plaintiff's answers to defendants' interrogatories also reveal that he was examined or treated by seven other physicians in the 15-year period prior to the discovery of the size 6 French catheter. His answers fail to disclose, as requested by the interrogatories, the reasons for each of these consultations.

Plaintiff testified in his deposition that only clear tubing was utilized at Northwest Community Hospital, that he was unaware of MESA personnel inserting any catheters into his body, and that paramedics may have inserted an I.V. catheter on the way to Northwest Community's emergency room. (Other testimony indicated that, if the paramedics had inserted an I.V. catheter, it would have been a size 18 or size 20 catheter approximately 1½ inches long.) Plaintiff proffered no evidence contrary to the contentions of the various defendants.

Following discovery, each defendant moved for summary judgment based upon plaintiff's failure to show when, where, or by whom he was injured and the defendants' contentions that they had not caused the catheter to be placed in plaintiff's body. The trial court, finding that the *res ipsa loquitur* doctrine raised an inference of negligence, thereby creating a factual issue to be resolved at trial, denied the motions.

Immediately prior to trial, and shortly after the supreme court's decision in *Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216, requiring a trial court to determine as a matter of law whether the *res ipsa loquitur* doctrine is applicable to the circumstances alleged by the plaintiff, the defendants renewed their motions for summary judgment. The trial court, determining that the plaintiff had failed to show the requisite exclusiveness of control of the instrumentality causing plaintiff's injuries, granted summary judgment in favor of each of the defendants. Plaintiff's motion for rehearing was denied. Plaintiff brings this appeal arguing that summary judgment was inappropriate since the issue of which of the defendants is (or are) responsible for the placement and failure to remove the catheter found in his body is a question of fact. Additionally, plaintiff contends that sufficient control of the catheter was established to invoke the doctrine of *res ipsa loquitur*.

I

The doctrine of *res ipsa loquitur*, actually a rule of evidence (J. Henderson & R. Pearson, The Torts Process 365 (1975); see also 3 J. Dooley, Modern Tort Law sec. 48.22, at 351 (1977)), permits an inference of negligence from circumstantial evidence when direct evidence of the cause of an injury is primarily within the knowledge and control of the defendant. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449, 207 N.E.2d 305.) Application of the *res ipsa loquitur* doctrine requires a showing that plaintiff's injury (1) resulted from an occurrence which does not ordinarily occur in the absence of negligence, (2) was caused by an instrumentality or agency under the exclusive management or control of the defendant, and (3) occurred under circumstances indicating the injury was not due to any voluntary act or negligence on the part of the plaintiff. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216; 3 J. Dooley, Modern Tort Law sec. 48.02 (1977); see E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 302.2 (1979).) There is no question that the first and third elements are satisfied here.

■ The trial court granted summary judgment for the reason that exclusive control was not shown. The reason for the exclusive control requirement is that it must appear that the negligence of which the doctrine warrants an inference is probably that of defendant and not of another. (2 F. Harper & F. James, Torts sec. 19.7, at 1085 (1956).) Courts generally do not apply the exclusive control requirement as it is literally stated. (2 F. Harper & F. James, Torts sec. 19.7, at 1086 (1956); see, *e.g.*, 3 J. Dooley, Modern Tort Law sec. 48.05 (1977) and 1 Speiser, Medical Malpractice sec. 4:10, at 151 (1972).) As Prosser reported,

" 'Control' if it is not to be pernicious and misleading, must be a very flexible term. It must be enough that the defendant has the right or power of control, and the opportunity to exercise it ***." (Prosser, Torts sec. 39, at 220 (4th ed. 1971).)

"The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence connected with it.' " 2 F. Harper & F. James, Torts sec. 19.7, at 1086 (1956), quoting from Prosser, *Res Ipsa Loquitur in California*, 37 Calif. L. Rev. 183, 201 (1949).

Plaintiff, citing *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305, and *Martino v. Barra* (1973), 10 Ill. App. 3d 97, 293 N.E.2d 745, contends that the instrumentality need

not be in the exclusive control of one or more of the defendants. In *Metz*, although two separate entities may have had access to the injurious instrumentality, the court noted that the defendant at all times was solely responsible for the maintenance of the instrumentality causing the injury. Due to the nature of the accident, it was most likely caused by the defendant's negligence. In *Martino*, the defendant had exclusive control of the rear wheels of a cement-mixer truck while repairing a flat tire. The wheels apparently were not attached properly to the rear axle while defendant was in control of the wheels. There was no evidence from which to impute negligence to any other party.

Plaintiff argues that the flexible standard of control announced in *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569, governs this action. *Lynch* concerned damages to the defendant's gearbox which the defendant's employees helped the plaintiff repair. Our supreme court noted that comment *g* to section 328D of the Restatement explains that the key question regarding control is whether the probable cause for the harm is one which the defendant was under a duty to the plaintiff to anticipate or guard against. (See Restatement (Second) of Torts sec. 328D, comment *g*, at 161 (1965).) In adopting a flexible standard of control, the court distinguished the situation involved there from "a multiple-defendant case like *Kolakowski* [*v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397,] or *Ybarra v. Spangard* (1944), 25 Cal. 2d 486, 154 P.2d 687, where a joint-control theory was applied to hold defendants liable." (*Lynch v. Precision Machine Shop, Ltd.* (1983), 93 Ill. 2d 266, 274-75.) The court's holding was premised upon the plaintiff's contractual obligation as well as the degree of supervision, inspection and control over the gearbox and defendant's employees actually exerted by Lynch at the time of the probable negligence. *Lynch* is distinguishable as not being a multiple defendant case. Too, although not requiring "exclusive" control of the gearbox by the plaintiff, the *Lynch* opinion noted that the plaintiff at all times had responsibility for the repairs undertaken and supervised the actions of defendant's employees. That is a far cry from the situation here where the defendants named in each count of the complaint acted independently from each other.

*Ybarra v. Spangard* (1944), 25 Cal. 2d 486, 154 P.2d 687, cited by the plaintiff, is also distinguishable. In *Ybarra*, the plaintiff was injured during a surgical procedure while unconscious. The California Supreme Court held "that where a plaintiff received unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities

which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct." (25 Cal. 2d 486, 494, 154 P.2d 687, 691.) Different from the situation in *Ybarra*, the plaintiff here has not named as defendants all of the entities who might have caused his injuries. This is fatal to his action since "[t]he plaintiff [must] eliminate the possibility that the accident was caused by someone other than any defendant." (3 J. Dooley, Modern Tort Law sec. 48.19, at 347 (1977); see also *Spannaus v. Otolaryngology Clinic* (1976), 308 Minn. 334, 242 N.W.2d 594.) Too, the situation in *Ybarra* concerned a single surgical procedure at a known time and location. Because all of the multiple defendants were present during Ybarra's surgery, they each had superior knowledge as to the cause of his injuries. Their shared, joint, and concurrent control was sufficient to raise the inference and require them to dispel the *prima facie* case of their negligence. (Accord, *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 396, 415 N.E.2d 397 (concurrent control situation where "the cause [of plaintiff's injury] was within the exclusive knowledge of the defendants"); see also *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877.) Since the situation here differs from that in *Ybarra*, the California Supreme Court's limitation in *Ybarra* becomes extremely significant:

"We do not at this time undertake to state the extent to which the reasoning of this case may be applied to other situations in which the doctrine of res ipsa loquitur is invoked." *Ybarra v. Spangard* (1944), 25 Cal. 2d 486, 494, 154 P.2d 687, 691.

The trial court expressed its opinion that the present situation went beyond that found in *Ybarra*, and plaintiff's counsel agreed. At the hearing on defendant's motion for summary judgment, plaintiff's counsel made the following comments:

"There is no question that I can't prove that any of these defendants had exclusive control individually of the instrumentality that caused the injury in this case. That's why they are all here.

* * *

If I have to prove that one of these people had exclusive control, I can't do it. I couldn't do it five years ago, and after discovery, I can't do it today. But what I can prove is one of them had control of this instrumentality while this man was under their care."

This last statement by plaintiff's counsel is not accurate. Since the catheter may have been inserted by a nonnamed party, plaintiff cannot prove that any of the defendants had *any* control over the instru-

mentality.

> "It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant. On this too the plaintiff has the burden of proof \*\*\*." (Prosser, Torts sec. 39, at 218 (4th ed. 1971); see also *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877; 1 Speiser, Medical Malpractice sec. 2:10, at 49 (1972); Restatement (Second) of Torts 328D, comment f, at 160 (1965); 3 J. Dooley, Modern Tort Law sec. 48.20, at 347 (1977).)

Each of the defendants affirmatively asserted and established that they had no control of the catheter and no knowledge concerning its placement in plaintiff's body. Plaintiff failed to present any evidence to contradict the defendants' assertions which must be taken as true. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50; see also *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810.

In cases of medical malpractice against multiple defendants the doctrine has been held applicable where the defendants were in joint control of the agency causing the injury. Conversely, the doctrine has been held not applicable against multiple defendants where it was not shown that they were in joint or exclusive control of the injuring agency. (2 Speiser, Medical Malpractice sec. 24:6 (1972), citing *Shutts v. Siehl* (1959), 109 Ohio App. 145, 10 Ohio Op. 2d 363, 164 N.E.2d 443, and *Meyer v. St. Paul-Mercury Indemnity Co.* (La. App. 1952), 61 So. 2d 901, *aff'd* (1953), 225 La. 618, 73 So. 2d 781.) Too,

> "[I]f the negligence can be attributed to any one of several persons, and there is no principle which would make all of them liable *in solido*, there is no basis on which the case can be submitted to the jury under the *res ipsa loquitur* doctrine.
>
> \* \* \*
>
> It has been recognized that, as a general proposition, where there are multiple defendants, any one of whom might have been at fault, it is ordinarily not proper to say that any one had exclusive control of the instrumentality or that any one had or should have had exclusive knowledge as to how or why the accident occurred." (1 Speiser, Medical Malpractice sec. 4:9 at 149-50 (1972).)

Similarly, the majority of courts have held that "[w]henever the injury could have been caused by a person not a joint actor, or a person not in joint control of the patient, the theory is inapplicable." (Note, *The*

*Application of Res Ipsa Loquitur in Medical Malpractice Cases,* 60 Nw.U.L. Rev. 852, 870 (1966); see also Prosser, Torts sec. 39, at 221 (4th ed. 1971).) The defendants here, as shown, were not acting jointly with each other. The situation here involves different treatment by different entities at different times in different locations. Neither plaintiff nor the defendants have knowledge of the who, when, or where questions surrounding plaintiff's injury. Without knowledge of the event causing the injury, it cannot be said under the facts here that any medical personnel who treated plaintiff was more probably negligent than any other. (See *Politakis v. Inland Steel Co.* (1983), 118 Ill. App. 3d 249, 454 N.E.2d 811.) Further complicating the matter is the fact that the catheter may have been inserted by a nonnamed medical provider.

## II

Summary judgment is appropriate where the pleadings, depositions, admissions, affidavits, and exhibits submitted to the trial court reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c); *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) A mere allegation that there exists a genuine issue of material fact does not create such an issue. (*Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 937, 415 N.E.2d 481.) Plaintiff is required to present some factual basis that would arguably entitle him to a judgment under the applicable theory of law. (*Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 643, 411 N.E.2d 1168.) Plaintiff has the affirmative duty, on the defendants' motions for summary judgment, to bring forth all facts and evidence that he believed would satisfy his burden of proving the existence of a cognizable cause of action. (*Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36.) Plaintiff has failed to meet his burden.

Plaintiff contends that which of the defendants inserted and failed to remove the catheter is a question of fact for the jury's determination. His contention prematurely assumes that one or more of the defendants was in fact negligent. This initial consideration was not brought out by the evidence. Moreover, it is for the trial court to determine in the first instance whether, as a matter of law, the doctrine is applicable to the circumstances involved. (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—1113; *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 394, 415 N.E.2d 397; *Walker v. Rumer* (1978), 72 Ill. 2d 495, 500, 381 N.E.2d 689; *Rinck v. Palos Hills Consolidated High School*

*District No. 230* (1979), 82 Ill. App. 3d 856, 862, 403 N.E.2d 470.) If the trial court here had found the doctrine to be applicable, only then would the factual question concerning which of the defendants might be liable go to the jury.

Plaintiff cites *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 251 N.E.2d 105, and *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50, for the proposition that a court should be cautious to enter summary judgment in cases of medical malpractice because of the reluctance of members of the medical profession to testify against each other. We do not view that reluctance to be a problem here because of the unlikelihood that the defendants named in any one of the five counts of the complaint would have knowledge of the negligence of any of the other defendants. Moreover, plaintiff apparently made no attempt to submit the discovery testimony of any medical personnel other than the defendants to the trial court. No possible harm could have resulted from an alleged reluctance to testify if no attempt was made to obtain the testimony of those who are said to be averse.

■ Plaintiff's complaint creates a situation whereby he throws his opponents into a pit while he sits above the fray, content to have the defendants fight it out among themselves. This position might not be so unpalatable if it were not for the fact that the defendants are effectively blind as to the source of plaintiff's injury, for they were not present during each other's treatment of the plaintiff. Too, the very real possibility that the "culprit" is not among them makes it impossible for the defendants to point to the negligent entity. The situation presented here is not suited to the doctrine of *res ipsa loquitur.*

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.