MARY N. STONE *et al.*, Plaintiffs-Appellants, *v.* LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 82—437

Opinion filed September 15, 1983.

Joel S. Ostrow, of Chicago, for appellants.

Leonard A. Nelson, of Schoenberg, Fisher & Newman, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, who are tenant-owners of cooperative apartment buildings located at 860-880 North Lake Shore Drive in Chicago, Illinois, appeal a trial court decision in favor of defendants who are managing trustees of the cooperative. They raise the following issues for review: (1) whether allegations that the managing trustees had no authority to adopt a new lease with a new assessment schedule stated a cause of action; (2) whether lack of personal notice to the tenant-owners of a new lease and increased assessments, and of a special assessment, barred imposition of such lease and assessments as a matter of law; and (3) whether allegations that the special assessment had been sub-

ject to collection without proper notice or authority stated a cause of action.

We affirm.

On November 3, 1981, plaintiffs filed an amended complaint as a class action, the class being holders of certificates of beneficial interest in the 860 Lake Shore Drive trust. Defendant La Salle National Bank is trustee of the trust in which the trust assets are held, and the individual defendants are managing trustees.

In count I of their complaint, plaintiffs alleged that the trust was created by an agreement dated April 1, 1949. Article 2.01 of the agreement provides for the issuance of certificates of beneficial interest which incorporate by reference all of the terms and provisions of the trust agreement. The certificates provide for issuance of a standard form lease. Paragraph 3 of the lease provides for payment of an annual assessment for maintenance and improvement of the buildings. The amount of the assessment is dependent on the size of the apartment as specified in the lease.

In April 1980, the managing trustees changed the lease so as to authorize increased assessments after a certain date and the imposition of special assessments at any time. Plaintiffs allege that this was a change within the provisions of the trust agreement.

On April 28, 1981, the managing trustees passed a resolution imposing substantial increases in assessments, effective July 1, 1981. On August 1, 1981, the trustees caused letters to be left in hallways informing tenants that a new lease had been adopted in April 1980. Tenants were advised to surrender the old lease and execute a new one. The new lease allowed trustees to impose changes in assessments at any time and to impose special assessments. The letter served as notice to the tenants and threatened legal action against tenants who failed to pay the increased assessment.

Plaintiffs argue that since the managing trustees did not submit the amendment to the lease to certificate holders as required by the trust agreement, the change in the lease and the imposition of an increased assessment were illegal and improper.

Plaintiffs asked for a temporary restraining order restraining defendants from collection of assessment, from filing of forcible entry and detainer actions, from other legal action against tenants to enforce the assessments, and from enacting amendments without approval by certificate holders. Plaintiffs asked for a declaratory judgment and for the return of assessments improperly collected.

In count II, plaintiffs alleged that the lease provided for service of notices by the lessor personally or by mail. Plaintiffs claim that defend-

ants failed to serve notice of the increased assessment in accordance with the lease.

In count III, plaintiffs alleged that the August 1, 1981, letter threatened a special assessment. This was illegal because the assessment was selectively imposed on tenants who resisted payment of the increased assessment and was not proportioned to the schedule of assessment attached to the standard form lease.

In count IV, plaintiffs alleged that they were notified of a new special assessment for real estate taxes on October 9, 1981. Plaintiffs argued that since an amendment authorizing a special assessment was not submitted to certificate owners for a vote as required by the trust agreement, imposition of the assessment was illegal.

On November 10, 1981, defendants answered plaintiffs' complaint and affirmatively pleaded the following. On April 10, 1980, the managing trustees decided to adopt a new lease. Minutes of the meeting were posted on bulletin boards in the buildings. On April 16, 1980, the new lease was formally adopted. Minutes of the meeting and the new lease were posted. In June 1981, a newsletter was distributed to tenants reminding them of the new lease.

On November 12, 1981, the managing trustees counter complained against Walter Baehrend, alleging that from October 1, 1980, to June 16, 1981, he was a managing trustee. They asked that if any judgment is entered against them it should be apportioned among them and Baehrend. Baehrend answered the countercomplaint by alleging that he objected to actions taken by the trustees during his term and resigned because of disagreement with the other managing trustees.

On February 8, 1982, the trial court granted defendants' motions for summary judgment and judgment on the pleadings. Plaintiffs filed a notice of appeal of the February 8, 1982, order on February 26, 1982. On March 10, 1982, the countercomplaint was dismissed on defendants' motion.

On appeal, plaintiffs make lengthy arguments regarding the trust agreement between the parties. They contend that defendants acted contrary to the trust agreement and that such was alleged in their complaint. They argue that by alleging the breach of the trust agreement, the complaint clearly stated a cause of action. Plaintiffs conclude that the trial court should not have granted defendants' motion for summary judgment.

A number of questions are raised regarding the issuance of the new lease agreement. However, the dispute centers around the increased assessment imposed upon plaintiffs and the other cooperative owners; specifically, whether the notice requirement of the trust agree-

ment was followed by the managing trustees prior to changing the lease and increasing the assessment charges to be paid by cooperative owners.

The certificates of beneficial interest issued under the trust agreement provide in part:

> "So long as said lease is in effect, the apartment covered by said lease shall be the apartment originally designated as appertaining to this Certificate at the time of the original issuance hereof unless changed by the mutual consent of the holder hereof and the Managing Trustees. All of the leases to Certificate Holders shall be in substantially the same form except as to varying amounts of rent to be provided for therein. *The terms and provisions of such leases may be changed from time to time by the Managing Trustees.*" (Emphasis added.)

The parties agreed during oral arguments that the managing trustees have the authority to increase the assessment charges imposed on cooperative owners. Plaintiffs' objection is directed to the manner in which it was implemented as well as the question of whether the increase was necessary.

Article 7, section 7.01 of the trust agreement provides:

> "7.01. This Trust Agreement may be amended, altered or modified by the resolution of the Managing Trustees. If, in the opinion of the Managing Trustees (which shall be conclusive), any such amendment, alteration or modification materially or substantially affect the rights of the Certificate Holders, the Managing Trustees shall notify the Certificate Holders of the nature of such amendment, alteration or modification not less than twenty days prior to the date on which it is proposed that such amendment, alteration or modification is to become effective and such amendment, alteration or modification shall not become effective unless prior to such date Certificate Holders holding not less than a majority of the total face amount of all the then outstanding Trust Certificates shall vote for or approve such amendment, alteration or modification."

If the increased assessment and issuance of new leases is construed as a material alteration or amendment of the trust agreement, then the managing trustees were required to notify the cooperative owners as provided by section 7.01 of the trust agreement.

However, article 4, section 4.01 of the trust agreement provides in part:

> "All leases to Certificate Holders demising apartments in the housing project which is the subject matter of the Trust shall be

in substantially the same form except as to varying amounts of rent to be provided for therein. *The terms and provisions of such leases may be changed from time to time by the Managing Trustees."* (Emphasis supplied.)

This language does not indicate that the managing trustees need the approval of a majority of the cooperative owners before changing the provisions of the lease. It does not appear that the material alteration or amendment of the trust agreement referred to in article 7, section 7.01, was intended to include changes in the lease agreement. Nowhere in the trust agreement is it suggested that the lease agreement may only be changed by action of the cooperative owners. Therefore, to determine whether the managing trustees acted improperly, we must determine the criteria for issuing a new lease agreement.

The certificates of beneficial interest issued under the trust agreement provide in part:

"The ownership of this Certificate shall entitle the holder hereof to a lease of ........................ in the housing project which is the subject of the trust, subject to the payment of the rent provided for in said lease and the performance and observance of all terms, provisions and conditions provided in said lease to be kept, performed or observed by the lessee thereunder, and subject to the provisions set forth below as to the effect of termination of said lease. So long as said lease is in effect, the apartment covered by said lease shall be the apartment originally designated as appertaining to this Certificate at the time of the original issuance hereof unless changed by mutual consent of the holder hereof and the Managing Trustees. All of the leases to Certificate Holders shall be in substantially the same form except as to varying amounts of rent to be provided for therein. The terms and provisions of such leases may be changed from time to time by the Managing Trustees."

Additionally, paragraph 3(a) of the original lease agreement provides in part:

"Lessor shall notify Lessee in writing of any such increase or decrease not later than March 1st of any year, and Lessee shall thereupon pay the assessment specified in such notice monthly in advance, commencing on the first day of May for the succeeding twelve (12) months and for each succeeding twelve (12) months, unless and until a further notice of increase or decrease in the assessment is given by Lessor to Lessee, as herein provided."

These two provisions give the general criteria to be used when issuing

a new lease, amending the existing lease, and increasing or decreasing the assessment charges. Neither of these instruments spell out specifically *how* notice is to be given. Thus, they are not determinative and can only be used as guidelines in determining whether the managing trustees acted improperly in carrying out their duties.

On or about April 28, 1981, the managing trustees passed a resolution imposing an assessment increase, effective July 1, 1981. The cooperative owners were not notified of the increase until on or about August 1, 1981. Section 7.04 of the trust agreement states in part:

"Any notice to be given to the Certificate Holders shall be duly given if mailed prepaid to each Certificate Holder, addressed to his last post office address as shown on the books of the Trustee. Every notice so given shall be effective whether or not received and the date of mailing shall be the date such notice is deemed given for all purposes."

Additionally, paragraph 27 of the general provisions of the original lease agreement states:

"27. Any notice which Lessor may give to Lessee hereunder shall be sufficient if (a) personally served on Lessee or any member of his family above the age of fifteen (15) years or if (b) mailed by Lessor to Lessee by United States certified or registered mail, postage prepaid, addressed to Lessee at such address as Lessee shall theretofore have furnished to Lessor in writing, or if no such address shall have been furnished Lessor then at the premises hereby demised, and the giving or serving of such notice or demand in either of the ways above specified shall constitute a good and sufficient notice or demand for any and all purposes, whether under the terms and provisions hereof or otherwise."

The managing trustees gave the cooperative owners notice of the new lease and increased assessment in one or more of the following ways: (1) on May 1, 1980, minutes of the trustees' meeting of April 16, 1980, was posted on bulletin boards in the buildings' mail room; the minutes advised the cooperative owners that a new lease had been adopted; (2) on or about April 30, 1981, the building manager disseminated notice of an impending assessment increase. It appears that the dissemination was accomplished by leaving notices in various areas of the buildings; (3) from the end of June 1981, each cooperative owner received a statement of his assessment charge reflecting the increase; (4) a newsletter published by cooperative owners at the end of June 1981 announced the assessment increase; (5) a letter from the managing trustees to the cooperative owners advising them of the new lease

and assessment increase. The letter was left outside the doors of all apartments in the buildings on or about August 1, 1981.

■ An examination of the notice provisions of the trust agreement and lease shows that the managing trustees did not follow the provisions set out therein. They did not notify the cooperative owners of the assessment increase by March 1, 1981, as required by paragraph 3(a) of the lease agreement. Neither did they mail the notices to the cooperative owners as suggested by section 7.04 of the trust agreement. It is clear that the managing trustees did not use the best method available to notify the cooperative owners. However, that single failure in judgment is insufficient to nullify the managing trustees' right to adopt a new lease and increase assessment charges.

There was no allegation of fraud or misrepresentation on the part of the managing trustees. Neither is there any requirement that there be a vote by the cooperative owners before a new lease or increased assessment charges could be adopted. While it is true that a better method of notice could have been used, plaintiffs have not denied that the cooperative owners were in fact aware of the impending charges.

The August 1, 1981, letter from the managing trustees to the cooperative owners in effect cured whatever notice defect existed. The cooperative owners were notified that they would not be required to pay the assessment increase until October 1, 1981 (60 days from the date of the notice). At the time of the litigation, all but two or three tenant owners had paid the increased assessment. This indicates that notice was received in some manner. Plaintiffs have shown no harm suffered as a result of the manner in which notice was given.

We reject plaintiffs' argument that the fact that they suffered no material loss or prejudice should have no bearing on this court's decision.

■ We will not make a determination on the basis of form rather than substance. (*Reese v. Melahn* (1973), 53 Ill. 2d 508, 513, 292 N.E.2d 375, 379.) Even if we accepted plaintiffs' contentions and reversed the trial court, plaintiffs would find themselves in the same position in which they now stand. We will adhere to the equitable maxim that the law does not require the doing of a useless act. *Haas v. Cravatta* (1979), 71 Ill. App. 3d 325, 329, 389 N.E.2d 226, 229.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P.J., and LINN, J., concur.