2020 IL App (1st) 180718
No. 1-18-0718
June 15, 2020

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ALMA WILLIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAURICIO MORALES, M.D.; | ) | No. 10 L 6049 |
| CHING-CHONG HUANG, M.D.; | ) | |
| JEFFERY FLAGG, D.D.S., M.D.; DAVID | ) | |
| McCORMICK; PAUL KOWALCZYK; | ) | |
| KIM PRICE; and SISTERS OF | ) | |
| ST. FRANCIS HEALTH SERVICES, INC., | ) | The Honorable |
| d/b/a St. James Hospital and Health | ) | Kay Marie Hanlon, |
| Centers, Chicago Heights, Illinois, | ) | Judge Presiding. |
| and d/b/a St. James Anesthesia, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Griffin concurred in the judgment and opinion.
Justice Hyman dissented, with opinion.

**OPINION**

¶ 1 Alma Willis sued a surgeon, two anesthesiologists, and three nurse anesthetists, claiming that their negligence during surgery injured her. A jury returned a verdict in favor of all defendants. Willis argues on appeal that the trial court erred (1) by granting a motion *in limine*

barring all evidence related to her claim based on *res ipsa loquitur*, (2) by refusing a missing witness instruction, (3) by permitting a defense expert to testify to an opinion not expressed in his deposition, and (4) by restricting the testimony of her experts. We find that Willis presented sufficient evidence to permit a jury to decide whether she proved that defendants controlled the instrumentalities that caused her injury and that the injuries would not have occurred without negligence. We reverse and remand for a new trial at which the court must permit Willis to present evidence and arguments related to her theory of *res ipsa loquitur*.

¶ 2                                    I. BACKGROUND

¶ 3        Willis suffered from back problems. Her doctor referred her to Dr. Jeffery Flagg, a plastic surgeon, for treatment. Dr. Flagg scheduled a reconstruction of Willis's right breast, a reduction of her left breast, and a revision of her abdomen, planning to complete all three procedures in a single surgery. Dr. Flagg told Willis the surgery would take about five hours.

¶ 4        Dr. Flagg performed the surgery, which took 12 hours, on May 21, 2008. When Willis came to the recovery room, nurses noted on the chart that Willis had very swollen arms. The nurses charted Willis's pain on May 22 at 12:15 a.m., 1:15 a.m., 2:15 a.m., 3:15 a.m., and 4:15 a.m. Each time they recorded her pain as 4 out of 10. The hospital sent Willis home on May 22, 2008.

¶ 5        On May 25, 2008, Willis's daughter brought Willis back to the hospital because Willis had become disoriented. Medical technicians at the hospital inserted an IV line. Doctors found that Willis had suffered pulmonary embolisms—blood clots—in both lungs after the May 21 operation. They successfully treated the embolisms. On May 30, while Willis remained hospitalized for the treatment, nurses recorded that Willis had pain, especially in her right

2

thumb, right index finger, and right middle finger since the surgery on May 21, and, according to the notes, "doctors were aware of this complaint." Willis again returned home.

¶ 6 Pain in Willis's arm persisted. A neurologist who performed an EMG (electromyography test) on June 17, 2008, found that Willis's median nerve in her right arm had sustained an injury near the elbow, and the median nerves in both arms showed damage in the carpal tunnel. Dr. Robert Coats performed surgery on August 5, 2008, to release the pressure on the nerves in the carpal tunnels. The surgery improved Willis's condition, but she continued to experience pain and a limited range of motion.

¶ 7 In May 2010, Willis filed a medical malpractice complaint naming as defendants the hospital, Dr. Flagg, and the two anesthesiologists and three nurse anesthetists who participated in the surgery. The hospital reached a settlement with Willis before trial. In count I of the amended complaint, Willis alleged that she suffered injuries to her nerves in the course of the surgery on May 21, and the injuries she sustained do not occur absent negligence. In a separate count, she alleged that Dr. Flagg negligently prolonged the surgery, failed to provide treatment that could have prevented her from developing the pulmonary embolisms, and failed to position her arms properly for the surgery. In further counts, she alleged that both anesthesiologists and all three nurse anesthetists failed to protect Willis's arms during the surgery.

¶ 8 After the parties completed discovery, defense counsel informed Willis that defendants intended to present a surveillance video showing Willis using her arms and hands. Willis's attorneys showed the video to Willis's expert witnesses, and all said that the video did not

change their opinions about Willis's injuries. Willis's attorneys updated their discovery responses with the opinions. Defense counsel chose not to re-depose the experts.

¶ 9    The circuit court scheduled the trial to start on June 22, 2017. On June 20, 2017, the court heard numerous defense motions, including one styled as a motion *in limine* to bar all evidence related to the count seeking recovery on a theory of *res ipsa loquitur*. The trial court granted the motion and barred all of Willis's experts from testifying that the injury to the median nerves would not have occurred without negligence.

¶ 10    Dr. Mauricio Morales, the anesthesiologist who supervised Willis's initial positioning for the surgery, admitted that he did not remember the surgery. Based on Dr. Morales's usual practice, he asserted that he, Dr. Flagg, and the initial nurse anesthetist, David McCormick, would have decided how to position Willis. They would have placed soft restraints on her arms between the wrists and the elbows. The standard of care required rechecking Willis's positioning every other hour or so to ensure no problems had arisen. The surgical team likely repositioned Willis during the surgery because a position for abdominal revisions is different from the position used for breast surgery.

¶ 11    Dr. Ching-Chong Huang, who relieved Dr. Morales as the anesthesiologist for Willis's surgery after the first six hours of surgery, also had no recollection of the surgery. He agreed that the standard of care required rechecking Willis's positioning periodically.

¶ 12    David McCormick, the first nurse anesthetist to work on Willis's surgery, testified that he helped to position Willis and monitored her blood pressure and blood loss to ensure sufficient replacement fluids throughout the surgery. He testified to the amount of fluids Willis took in during the surgery and to the amount of fluids, including blood and urine, Willis egested.

4

¶ 13    Kim Price, the nurse anesthetist who relieved McCormick, testified that she checked the straps holding Willis's arms, and they remained appropriately loose. She too testified about the amounts of fluid given to Willis.

¶ 14    Paul Kowalczyk, the nurse anesthetist who relieved Price, testified that he did not remember the surgery. Based on his usual practice, he said he used drugs to rouse Willis after the surgery. He recorded that Willis, drowsy, did not complain of pain immediately after the surgery. He gave her morphine. Although the nurses' notes indicate that Willis had limited movement of her extremities, Kowalczyk set up a pump Willis could operate by hand to administer to herself more morphine. She used only 29.6 milligrams of morphine, although the pump would have allowed her to use 45 milligrams. He admitted that surgeons lean on patients "all the time." If a nurse anesthetist saw such leaning, the anesthetist should tell the surgeon immediately, and the surgeon should immediately move away. Kowalczyk added, "It's not something we would document on a regular basis."

¶ 15    Dr. Flagg testified that during the surgery, "We were surprised by a golf ball size mass on the chest wall." It "changed the operation completely." Dr. Flagg admitted that after the operation Willis suffered a deep vein thrombosis (DVT)—a large blood clot—that moved to her lungs and became the pulmonary embolisms requiring hospitalization on May 25, 2008. He admitted that lengthy surgeries increase the risk of DVT. He did not prescribe anticoagulants for Willis. He agreed that anticoagulants might have prevented the thrombosis and consequent pulmonary embolisms. He testified, "The way you help alleviate DVT's postoperatively is to ambulate the patient and that is one of the orders that we put in as one of our postoperative orders." He admitted that the written discharge order did not mention

5

ambulation. On June 25, 2008, Dr. Flagg filled out a form in which he said Willis suffered "Postop right-hand neuropathy and pulmonary embolus." According to the form Dr. Flagg signed, Willis's consequent disability began on May 21, 2008.

¶ 16    Willis testified that before the surgery she had not experienced significant problems with her arms or hands. During recovery from surgery, Willis told the nurse her arms hurt. Later on May 22, she complained of pain in both arms. She could not move her hands or her arms. Her arms remained severely swollen for several days after the surgery. She described her continuing treatments and her continuing difficulties with her arms and hands.

¶ 17    Dr. Coats testified that in July 2008 Willis told him she began to have problems with her arms after the surgery on May 21. The EMG dated June 17, 2008, showed damage to the median nerve near the right elbow and at both wrists. For the damage near the wrists, Dr. Coats explained, "[t]he root cause is there's either swelling, fluid, or other things that fill up the carpal tunnel. And once you start filling up the space of the carpal tunnel, that takes away space from the median nerve." When he performed the carpal tunnel surgery, he found the median nerve flattened, proving "there was pressure on the nerve."

¶ 18    Karol Corey, Willis's occupational therapist, testified about Willis's limited progress in improving her range of motion. Willis told Corey that the problem with her arms started after the surgery on May 21, 2008.

¶ 19    Charles Barton, a nurse anesthetist, testified as an expert that the nurse anesthetists violated the standard of care by infusing far too much fluid and by failing to position Willis correctly for the procedures. Barton pointed out that the charted pain readings for Willis after the surgery made no sense because Willis would have slept through 12:15 a.m., 1:15 a.m., 2:15 a.m., 3:15

a.m., and 4:15 a.m., when nurses charted Willis's pain as 4 out of 10. Barton agreed that one would expect some swelling as a response to the trauma of surgery, but Willis experienced excessive swelling to the arms that lasted several days. He "attribute[d] most of that to the excessive amount of fluid she got through the case." Her report of pain in the thumb, first finger, and middle finger indicates that she suffered damage to the median nerve before the hospital admission on May 25, 2008.

¶ 20    Dr. John Fernandez, an orthopedic surgeon, testified that he examined Willis in 2014 and found that her median nerve had recovered somewhat, but not completely. In his expert opinion, he found to a reasonable degree of medical certainty that the surgery on May 21, 2008, caused the injury. He explained:

> "So she comes into the operating room, she doesn't have any of these complaints. ***
>
> *** The MRI scan shows that the brachialis muscle is not normal. That doesn't just happen on its own. The EMG shows that there's an injury to the nerve at two different levels. That's also not something that would just happen on its own."

¶ 21    In his opinion, the nerve sustained damage due to "at least two hours of continuous pressure of at least 200 *** millimeters of mercury" during the surgery. The defense showed the jury the surveillance video. The court permitted Dr. Fernandez to say that the video did not change his opinions. However, the court did not permit Willis to present from the video individual screenshots that, in Dr. Fernandez's opinion, particularly showed how her movements reflected her continuing injury.

7

¶ 22       Dr. William McElveen, a neurologist, testified that in his opinion, Willis suffered an injury to her median nerves at both wrists and at the right elbow in the surgery on May 21, 2008. One would not expect such severe swelling of her arms as a result of the breast surgeries and the abdominal surgery. He explained that a hematoma, probably caused by compression, led to the swelling at the elbow. The compressive injury most likely occurred because of "an immobilized extremity. *** The blood pressure cuff on the arm. Somebody leaning on the arm. *** [T]he extended position itself." He rejected the defense theory that the injury arose from a needle stick during the hospitalization that began May 25, 2008: "[I]f it occurred when somebody was drawing blood or sticking an IV or whatever and you hit that nerve, that person is going to tell you about it real quick because they're going to get a lot of pain and electric shock going down in that hand."

¶ 23       Dr. Geoffrey Keyes, a plastic surgeon, testified as an expert that in his opinion the applicable standard of care required Dr. Flagg to end the surgery after he completed the abdominal revision, about five hours into the surgery, because Willis had lost a great deal of blood. The prolonged surgery and excessive blood loss increased the risk of complications, including pulmonary embolism. Willis also "ended up with a neurologic injury as a result of prolonged surgery and positioning, most likely." He found to a reasonable degree of medical certainty that the nerve injury occurred during the operation. He explained, "she didn't have the injuries prior to surgery, the day before surgery. And as she came out of surgery, the most important area of her body that was of concern and of pain to her were both her arms." He added, "I don't know the specific mechanism, but there had to be pressure applied in one or

8

more areas for that type of pain and median nerve injury to have occurred." He noted, as one possible contributing factor:

> "If her arms swelled after she was positioned and that swelling contributed to a tighter fit of the straps, then they should've been loosened obviously. That might have alleviated and prevented median nerve damage."

¶ 24 Dr. Brian McAlary, a physician specializing in anesthesia, testified that Willis suffered a permanent injury to her median nerve during the surgery on May 21, 2008. One should not expect such severe swelling of the arms as a result of the procedures Dr. Flagg performed.

¶ 25 In his opinion:

> "[T]here were multiple factors that together, in and of themselves, perhaps no one of them could have caused it or did cause it but the combination of those factors did. And one of them was diminished oxygen delivery to her nerves in both arms initially. ***
>
> ***
>
> *** [T]he administration of crystalloid was in excess.
>
> * * *
>
> *** And the relevance of that excessive fluid administration was adding to the swelling and edema of her extremities, which limited her mobility and gave additional compression to the nerve.
>
> * * *

*** [T]here was inadequate attention to positional concerns including the failure to properly check her upper extremities and to periodically change the position of those extremities."

¶ 26      Willis presented an offer of proof that her experts would testify that the injury to the median nerve occurred during the surgery on May 21, 2008, and the injury would not have occurred absent negligence.

¶ 27      Two expert nurse anesthetists testified for the defense that the nurse anesthetists infused an appropriate amount of fluid throughout the surgery and that one should expect significant swelling after the operation Willis underwent. The experts found that the nurse anesthetists fully complied with the standard of care.

¶ 28      Dr. Charles Laurito, an anesthesiologist, testified that in his opinion the injury to the median nerve did not occur in the operation. He said, "I don't see the kinds of things I would expect, had there been damage to a forearm or an arm during an operation. There was no bruising, no bleeding, no needle stick marks, no compressive injury signs to the right extremity." He thought the injury most likely occurred when someone stuck an IV needle into the median nerve during the hospitalization that started May 25, 2008. On cross-examination, he admitted that if a needlestick injured the nerve, usually "the patient would have pain immediately and would have fiery sensation in their fingers." He added, "It's not a hundred percent."

¶ 29      Another anesthesiologist, Dr. Thomas Cutter, also opined that the injury did not occur during the surgery. He testified, "[Willis] had fluid overload, but I don't think there was any

significant sequela. There was no morbidity. There was no harm done from the additional fluid."

¶ 30    Defendants chose not to call two expert witnesses they had identified in discovery to the witness stand. Willis asked the court to instruct the jurors that they could infer, from the decision not to call the witnesses, that those witnesses would have given testimony adverse to the defense. Willis pointed out that in his deposition, Dr. William Davison stated he "didn't find any evidence that the blood was drawn in the right antecubital space [by the elbow] or an IV. That's why I really think this is probably related to the EMG." Dr. Davison admitted that "swelling [can] cause compression of the nerve in a joint," but in his opinion such compression could not affect the median nerve. He thought a blood flow problem might have caused the injury, but that was only one of several possible explanations. Dr. Russell Glantz admitted that swelling might have compressed the median nerves. The court denied the request for the missing witness instruction.

¶ 31    In closing argument, defendants emphasized Willis's inability to prove the mechanism that caused her injury. Counsel said, "if you go back there and you don't understand something, you don't remember hearing evidence about something, that a question's out there that hasn't been answered, that has to be charged solely and completely against the plaintiff."

¶ 32    The jury returned a verdict in favor of all defendants. In her posttrial motion, Willis again raised the issue of *res ipsa loquitur*. The court denied the motion and entered a judgment on the jury verdict. Willis now appeals.

¶ 33                                    II. ANALYSIS

¶ 34        On appeal, Willis argues that the trial court erred (1) by barring evidence and instructions on the theory of *res ipsa loquitur*, (2) by refusing the missing witness instruction, (3) by permitting Dr. Laurito to testify that a needlestick during the hospitalization that began on May 25, 2008, may have caused the injury, and (4) by limiting the testimony of Willis's expert witnesses.

¶ 35        Defendants contend that the two issue rule bars Willis from challenging the ruling concerning *res ipsa loquitur*. "[W]hen multiple claims, theories, or defenses were presented to the jury, without the submission of special interrogatories or separate verdict forms, the return of a general verdict creates a presumption that the evidence supported at least one of the claims, theories, or defenses and will be upheld." *Great American Insurance Co. of New York v. Heneghan Wrecking & Excavating Co.*, 2015 IL App (1st) 133376, ¶ 15. Willis offered no special interrogatory. Here, the trial court's ruling prevented the jury from considering whether to hold defendants liable under the *res ipsa loquitur* theory. The general verdict in favor of the defendants relates only to the claims presented, for allegations of specific negligent acts, and proves only that the jury found unproven either the specified acts or the alleged specific causal connections between those acts and Willis's injuries. We cannot infer from the verdict that the jurors would not have found the elements of *res ipsa loquitur* if the court had allowed them to consider the relevant evidence with applicable instructions. See *Great American*, 2015 IL App (1st) 133376, ¶ 16. Because the trial court did not permit Willis to present the *res ipsa loquitur* theory to the jury, the two issue rule does not apply. See *Great American*, 2015 IL App (1st)

133376, ¶¶ 15-16. Willis adequately preserved her objection to the trial court's rulings barring evidence and instructions on the theory of *res ipsa loquitur*.

¶ 36    "[T]he *res ipsa loquitur* doctrine is a species of circumstantial evidence." *Heastie v. Roberts*, 226 Ill. 2d 515, 542 (2007). The trial court must decide whether the doctrine applies as a question of law, subject to *de novo* review. *Heastie*, 226 Ill. 2d at 531. "[A] plaintiff seeking to rely on the *res ipsa* doctrine must plead and prove that he or she was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control. *Heastie*, 226 Ill. 2d at 531-32.

> "Illinois law does not require a plaintiff to show the actual force which initiated the motion or set the instrumentality in operation in order to rely on the *res ipsa* doctrine. To the contrary, if the specific and actual force which initiated the motion or set the instrumentality in operation were known unequivocally, leaving no reason for inference that some other unknown negligent act or force was responsible, the *res ipsa* doctrine could not even be invoked." *Heastie*, 226 Ill. 2d at 539.

¶ 37    If the plaintiff was unconscious at the time of the injury, and under the defendants' control, then the plaintiff has adequately shown the control element for *res ipsa loquitur*, even if she cannot establish the exact instrumentality that caused the injury. *Spidle v. Steward*, 79 Ill. 2d 1, 4, 7-8 (1980). Here, if Willis can convince a finder of fact that the injury occurred during the surgery, "it can be inferred *** that the instrumentality of the injury was the handling" of Willis by defendants. See *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 820 (2003).

¶ 38    Willis's experts explained that the medical records supported their conclusion that the injury occurred during the surgery on May 21, 2008. Defendants contend that they did not have exclusive control because their expert said the injury might have occurred during the hospitalization that began on May 25, 2008. "A plaintiff need not conclusively prove all the elements of *res ipsa loquitur* in order to invoke the doctrine. He need only present evidence reasonably showing that elements exist ***." *Dyback v. Weber*, 114 Ill. 2d 232, 242 (1986). Willis presented enough evidence to raise a question for the jury as to whether defendants had exclusive control over the instrumentality that caused the injury.

¶ 39    Willis's experts also testified in their depositions that the injury to the median nerve ordinarily would not occur without negligence. None of defendants' experts disputed this conclusion.

¶ 40    The trial court disallowed the evidence on grounds that Willis's experts testified that they knew "the specific and actual force" that caused the injuries. See *Heastie*, 226 Ill. 2d at 539. While several of Willis's experts said that compression caused the injury, they noted several different possible sources for the compression. As Willis's arms gradually swelled during the lengthy surgery, the anesthesiologists and nurse anesthetists may have failed to recognize that the arm straps had tightened and put pressure on the nerve. The anesthesiologists and nurse anesthetists may have repositioned Willis's arms negligently when they changed her position for the abdominal revision. Dr. Flagg may have leaned on Willis's arms during the surgery. The excessive fluid administered by all the nurse anesthetists may have aggravated the effect of other pressures on the nerve. The experts testified that they could not determine from the medical records which of the possible sources of pressure caused the injuries. Defense counsel

used the uncertainty in closing argument, telling the jurors that if they had unresolved questions about the cause of the injury, they must find in favor of defendants.

¶ 41    The appellate court considered the applicability of *res ipsa loquitur* in similar circumstances in *Kolakowski v. Voris*, 83 Ill. 2d 388, 397 (1980), where the court said:

"The defendant *** argues that plaintiff's introduction of evidence of specific negligence extinguishes plaintiff's right to rely on the doctrine of *res ipsa loquitur*. The premise for this argument is that if a plaintiff knows in what respects the defendant was guilty of negligence and presents any specific evidence of the negligent act, the doctrine of *res ipsa loquitur* is inapplicable ***. Defendant's theory would be accurate if the evidence introduced by plaintiff conclusively established the exact cause of his injuries. *** Our appellate court has consistently permitted a plaintiff to introduce evidence of specific negligence without depriving him of his right to rely on the doctrine of *res ipsa loquitur* where such specific evidence does not conclusively establish the cause of the injury."

¶ 42    Because the experts here could not conclusively establish the cause of Willis's injury, she could rely on circumstantial evidence to establish her claim. The trial court erred by precluding Willis's experts from testifying that the injury to Willis's median nerve would not have occurred absent negligence and by refusing to instruct the jurors on *res ipsa loquitur*.

¶ 43    The dissent claims that the opinions of Willis's experts, who found to a reasonable degree of medical certainty that the injury occurred during the surgery and it would not have occurred absent negligence, do not suffice to create a question for the jury as to whether Willis proved by a preponderance of the evidence that the injury occurred during the surgery and it would

not have occurred absent negligence. The dissent finds that Dr. Laurito's opinion that the injury might not have occurred during surgery establishes unequivocally that the injury might have occurred at some other time. The dissent would find that this court and the trial court must treat Dr. Laurito's opinion as controlling on the possible causes of the injury, despite the contrary opinions of Willis's well-qualified experts. No case or statute supports the dissent's contention.

¶ 44    The dissent cites *Loizzo v. St. Francis Hospital*, 121 Ill. App. 3d 172 (1984), where the plaintiff claimed that one of the defendants must have inserted the catheter found in his body during preparation for surgery. The defendants pointed out that paramedics not named as defendants also inserted a catheter into plaintiff's body. The defendants also alleged the catheter that the paramedics inserted may have been the catheter later found in plaintiff. According to the appellate court, "Plaintiff proffered no evidence contrary to the contentions of the various defendants." *Loizzo*, 121 Ill. App. 3d at 175. In *Raleigh v. Alcon Laboratories, Inc.*, 403 Ill. App. 3d 863, 867 (2010), also cited by the dissent, the plaintiff's own expert admitted that possible occurrences not under the defendants' control might have caused the injury.

¶ 45    The evidence here contrasts starkly with the evidence in *Loizzo* and *Raleigh*. Willis's experts explained how the medical records supported their conclusion that the injury must have occurred during the surgery on May 21, 2008, when the defendants had complete control over Willis. Dr. McElveen particularly explained his rejection of Dr. Laurito's suggested alternative cause: a needle stick directly into a nerve will cause the patient to cry out in pain.

¶ 46    The dissent effectively finds that the trial court did not err by barring the evidence of *res ipsa loquitur* because the jury had no right to believe any of Willis's experts and must believe

16

Dr. Laurito's testimony about a cause he believed possible. Courts should allow juries to assess the credibility of expert witnesses. See *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 167 (2003). The dissent claims that the jury found Willis's experts not credible. But the jury never heard their opinion that the injury would not have occurred absent negligence, and, most importantly, the jury never considered the question of whether Willis adequately proved that the injury occurred during the surgery and it would not have occurred absent negligence. Instead, the jury verdict supports the inference that the jury found that Willis failed to prove any specific mechanism for the compression of Willis's nerve. The dissent has not suggested any proper basis for taking from the jury the assessment of the credibility of the expert witnesses who would have testified to a reasonable degree of medical certainty that Willis's injuries occurred during surgery on May 21, 2008, and the injury would not have occurred without negligence. Under the reasoning of *Dyback*, 114 Ill. 2d at 242, the evidence in Willis's offers of proof sufficed to present to the jury the issue of whether Willis proved the elements of *res ipsa loquitur*.

¶ 47     The dissent finds Dr. Laurito's opinion especially credible in part because Willis's complaints about pain in her right wrist first appear in the medical record of the second hospitalization. But in that initial record the nurse noted "doctors were aware of this complaint" despite the lack of any prior note regarding the specific problem. The medical record itself supports the conclusion that caregivers failed to chart some of Willis's complaints about her arm pain.

¶ 48     Moreover, the dissent's reliance on the accuracy of the medical record conflicts with its conclusion that a needlestick during the second hospitalization might have caused the nerve

injury. As defendants' expert, Dr. Davison, explained, the medical record of the second hospitalization does not show any insertion of a needle into the antecubital area where the nerve compression occurred.

¶ 49 Of course, the record from the second hospitalization may fail to reflect all actual treatment, and a caregiver may have failed to record an errant needlestick in the antecubital area. The postsurgical record showing Willis's pain as 4 out of 10 at 12:15 a.m., 1:15 a.m., 2:15 a.m., 3:15 a.m., and 4:15 a.m. may not result from nurses cruelly waking Willis every hour as she recovered from a very difficult surgery to ask how much pain she felt. It may result from inaccurate charting. The failure to record specific complaints related to Willis's right wrist may result from a failure to chart the complaint and not from Willis's failure to complain. The medical records do not show that all of Willis's experts gave unsupportable opinions when they concluded that the injury occurred during the surgery and it would not have occurred absent negligence. The trial court erred when it disallowed this testimony and when it failed to instruct the jury on the issue of *res ipsa loquitur*.

¶ 50 Finally, the dissent asserts: "Post-surgery, Willis informed her primary care physician that she had been diagnosed with carpal tunnel syndrome, but it had not been confirmed." The dissent apparently adopted this assertion from the defendants' brief on appeal. The defendants cite in support only four questions in the record, where defense counsel assumed that the medical records included a note written by Dr. Navneet Singh stating that Willis told him about such a diagnosis. Dr. Singh did not testify, and his alleged note does not appear in the record on appeal. No witness confirmed that the medical record included the alleged note. We find that the dissent's assertion makes little difference legally: even if Willis had some preexisting

18

damage to her carpal tunnel, defendants would remain liable for aggravation of the preexisting condition. See *Balestri v. Terminal Freight Cooperative Ass'n*, 76 Ill. 2d 451, 455 (1979). The dissent's unsupported assertion shows a disturbing willingness to approve trial not by evidence but by insinuation. See *Clarquist v. Kirschenman*, 55 Ill. App. 3d 76, 80 (1977).

¶ 51        Willis separately argues that defendants improperly brought as an evidentiary motion *in limine* that effectively sought summary judgment on the first count of her complaint. Our supreme court said, "[a]lthough ordinarily only ultimate facts, and not conclusions or inferences, are to be pleaded, we are of the opinion that in the pleading of a cause of action in medical malpractice cases under the doctrine of *res ipsa loquitur*, reliance on the doctrine should be alleged." *Walker v. Rumer*, 72 Ill. 2d 495, 502 (1978). In accord with *Walker*, "[b]ecause Illinois requires fact pleading [citation], *res ipsa loquitur* is often pleaded as a separate claim." *Darrough v. Glendale Heights Community Hospital*, 234 Ill. App. 3d 1055, 1060 (1992).

¶ 52        Our discussion of the evidence bearing on whether the court should have permitted the jury to decide the *res ipsa loquitur* claim here involved extensive analysis of the evidence in a manner closely akin to the resolution of a summary judgment motion. By raising the issue as one of more than 100 motions *in limine*, presented less than two days before trial, when the trial judge candidly admitted that she had not read through all of the thousands of pages of depositions, defendants ensured inadequate consideration of the issues involved. See *Silverstein v. Brander*, 317 Ill. App. 3d 1000, 1005-06 (2000); *Peterson v. Randhava*, 313 Ill. App. 3d 1, 11-12 (2000). Defendants cite no case in which the trial court decided on a motion *in limine* whether the plaintiff stated a claim under the theory of *res ipsa loquitur*.

¶ 53        We need not address the other issues Willis raises, as those issues should not resurface on retrial. Willis's attorneys now know that defendants intend to rely on their theory that an IV needle stuck directly into Willis's median nerve caused no immediate pain but caused the severe nerve injury shown by the EMG in June 2008. If defendants intend to advance any other theory to explain the median nerve injury, they must appropriately notify Willis's attorneys and permit further discovery. Defense attorneys now know that Willis's experts intend to use stills taken from the surveillance video to explain how her movements show that she still suffers from the nerve damage. We reverse the judgment of the trial court and remand for a new trial.

¶ 54                                III. CONCLUSION

¶ 55        Willis presented sufficient evidence to raise a triable issue as to whether the injury to Willis's median nerve occurred during surgery on May 21, 2008, and whether the injury would have occurred in the absence of negligence. Accordingly, we reverse the trial court's judgment and remand for proceedings in accord with this order.

¶ 56        Reversed and remanded.

¶ 57        JUSTICE HYMAN, dissenting:

¶ 58        I respectfully dissent. Under the doctrine of *res ipsa loquitur*, the mere existence of the plaintiff's injury creates a presumption of culpability. According to the majority's conclusion, "Willis presented sufficient evidence to raise a triable issue" on (i) whether the injury occurred during the May 21 surgery and (ii) whether the injury would have occurred in the absence of negligence. *Supra* ¶ 55. I do not deny a "triable issue" but applying *res ipsa loquitur*. On these facts, the trial court properly granted the motion to bar the use of *res ipsa loquitur* because the

evidence established different agents, some not defendants at trial, could have caused Willis's injuries at different times. I would affirm.

¶ 59                                     *Res Ipsa Loquitur*

¶ 60        Section 2-1113 of the Code of Civil Procedure provides:

> "In all cases of alleged medical or dental malpractice, where the plaintiff relies upon the doctrine of res ipsa loquitur, the court shall determine whether that doctrine applies. In making that determination, the court shall rely upon either the common knowledge of laymen, if it determines that to be adequate, or upon expert medical testimony, that the medical result complained of would not have ordinarily occurred in the absence of negligence on the part of the defendant. Proof of an unusual, unexpected or untoward medical result which ordinarily does not occur in the absence of negligence will suffice in the application of the doctrine." 735 ILCS 5/2-1113 (West 2012).

¶ 61        An evidentiary doctrine, *res ipsa loquitur* affects the proof from which the trier of fact may draw an inference of negligence on the part of the defendant, but it does not affect the necessity or method of proving proximate cause. *Darrough v. Glendale Heights Community Hospital*, 234 Ill. App. 3d 1055, 1059 (1992).

¶ 62        This doctrine requires proof the plaintiff was injured (i) in an occurrence that ordinarily does not happen in the absence of negligence (ii) by an agency or instrumentality within the defendant's exclusive control. *Heastie v. Roberts*, 226 Ill. 2d 515, 531-32 (2007). A defendant's responsibility for a specific cause of an event arises through eliminating the responsibility of any other person. *Nichols v. City of Chicago Heights*, 2015 IL App (1st)

122994, ¶ 46 (citing *Lynch v. Precision Machine Shop, Ltd.*, 93 Ill. 2d 266, 273 (1982)). In addition, the plaintiff must show (i) the injury was not a result of plaintiff's own negligent acts (*Heastie*, 226 Ill. 2d at 539) and (ii) the injury can either be traced to a specific cause for which the defendant is responsible or that the defendant was responsible for all reasonable causes to which the accident could be attributed. *Napoli v. Hinsdale Hospital*, 213 Ill. App. 3d 382, 388 (1991) (citing Prosser & Keeton on the Law of Torts, § 39, at 248 (W. Page Keeton *et al.* eds., 5th ed. 1984)). "Furthermore, where *res ipsa loquitur* is to be applied, all parties who could have caused the plaintiff's injuries are joined as defendants." *Nichols*, 2015 IL App (1st) 122994, ¶ 46 (citing *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 257 (1990)).

¶ 63 Whether the doctrine applies in a medical malpractice case presents a question of law reviewed *de novo*. *Heastie*, 226 Ill. 2d at 531; 735 ILCS 5/2-1113 (West 2004). "Our sole inquiry is whether the allegations in plaintiff's complaint were sufficient to state a cause of action for negligence based on the *res ipsa loquitur* doctrine." *Heastie*, 226 Ill. 2d at 542.

¶ 64 *Res ipsa loquitur* permits an inference of negligence from otherwise inexplicable facts. *Drewick v. Interstate Terminals, Inc.*, 42 Ill. 2d 345, 351 (1969). It is "simply a rule of evidence relating to the sufficiency of plaintiff's proof." (Internal quotation marks omitted.) *Darrough*, 234 Ill. App. 3d at 1060; see *Lynch*, 93 Ill. 2d at 274; *Wilson v. Michel*, 224 Ill. App. 3d 380, 386 (1991) (*res ipsa loquitur* "is not a separate legal theory but rather is a type of circumstantial evidence which permits the trier of fact to infer negligence when the precise cause of the injury is not known by the plaintiff"); *Kruger v. Newkirk*, 40 Ill. App. 3d 581, 585 (1976) (*res ipsa loquitur* similar in effect to circumstantial evidence because "an inference of negligence arise[s] from circumstantial evidence" (internal quotation marks omitted)).

22

¶ 65      In deciding whether the medical injury would have occurred absent defendant's negligence, the reviewing court may rely on expert medical testimony and common knowledge. See *Wilson*, 244 Ill. App. 3d at 386. Defendant's control serves as a prerequisite to finding liability. *Drewick*, 42 Ill. 2d at 351. As the majority notes, an unconscious plaintiff under the defendants' control has adequately shown the control element. *Supra* ¶ 37; see *Kolakowski v. Voris*, 83 Ill. 2d 388, 396 (1980) ("[W]hen a patient submits himself [or herself] to the care of a hospital and its staff and is rendered unconscious for the purpose of surgery performed by independent contracting surgeons, the control necessary under *res ipsa loquitur* will have been met."). But our inquiry does not stop there.

¶ 66                            Exclusive Control and Causation

¶ 67      The doctrine of *res ipsa loquitur* does not apply when (i) possible alternative causes exist and the plaintiff is unable to establish that the defendant's actions specifically caused the injury, (ii) an injury could have a non-negligent cause, or (iii) the plaintiff failed to name all persons or entities who might have caused the injuries. *Raleigh v. Alcon Laboratories, Inc.*, 403 Ill. App. 3d 863, 869-870 (2010).

¶ 68      Willis argues that she sustained a median nerve injury in her right elbow as the result of negligence during her first surgery. Willis failed to prove this element. Willis's complaint omits any person or entity who treated her post-surgery. Count III of the "Second-Amended Complaint" included the following: "10. After Plaintiff Alma Willis' May 22, 2008, discharge from Defendant St. James Hospital, Defendant Flagg next saw Plaintiff Alma Willis during her re-admission at Defendant St. James Hospital from May 25, 2008 through June 2, 2008."

An identical assertion was in Count XVII alleging medical negligence against the entity WHICHDR. Enterprises, Ltd.

¶ 69     Willis failed to properly allege the "exclusive control" element that triggers applying *res ipsa loquitur* as an evidentiary tool for inferring negligence. The injury still could reasonably have been caused by a non-defendant. *Raleigh*, 403 Ill. App. 3d at 869 (citing *Loizzo v. St. Francis Hospital*, 121 Ill. App. 3d 172, 178 (1984)). Indeed, the evidence suggests that the injury to Willis's right elbow could have occurred during her second hospital admission on May 25. During this visit, an emergency room nurse twice attempted to place an IV into her right elbow crease. The median nerve runs close to where an IV would be inserted, and according to both Willis's and defendants' experts, a needle stick presents the most common way to injure that nerve. So a failed attempt at inserting an IV could have injured the median nerve.

¶ 70     All parties' experts agree that Willis's first recorded complaints about pain to her right side occurred during her second hospital visit, a few hours after the nurse reinserted the IV. Dr. McElveen testified that an injury to a blood vessel can cause a hematoma that could compress the nerve, which is even more likely for patients on blood thinners, as had been prescribed to Willis.

¶ 71     This case resembles *Loizzo*, 121 Ill. App. 3d at 173. There, a catheter was left in the plaintiff after surgery. The plaintiff attempted to use *res ipsa loquitur* but did not know by whom or where the catheter had been inserted. *Id.* The defendants argued that nonnamed parties could be responsible. *Id.* at 179. The court rejected *res ipsa loquitur* because a nondefendant treater could have inserted the catheter. *Id.* at 179-80. Negligence alone is not enough; plaintiff still

had "to bring it home to the defendant." (Internal quotation marks omitted.) *Id.* at 179; see *Raleigh*, 403 Ill. App. 3d 863 (summary judgment proper where plaintiff failed to prove "exclusive control" element by not naming all potential entities that may have reasonably caused injuries); *Napoli*, 213 Ill. App. 3d at 390 (*res ipsa loquitur* inapplicable where possibility that injury occurred at different time).

¶ 72     Similarly, this court found the doctrine of *res ipsa loquitur* inapplicable in *Garland v. Sybaris Clubs International, Inc.*, 2019 IL App (1st) 180682, ¶ 117, because the evidence was insufficient to prove the specific cause of the airplane crash to have been an act or omission resulting from the pilot's incompetence or inexperience and, therefore, within the defendants' exclusive control. The plaintiff presented no proof that the defendants exclusively controlled "the immediate cause of the injury."

¶ 73     Likewise, in *Crowley v. A-North Shore Driving School*, 19 Ill. App. 3d 1035, 1036-38 (1974), the plaintiff was a driver's license examiner who sued a driving school for injuries suffered in an accident caused by a student. This court held that for *res ipsa loquitur* to apply, "it is necessary to prove the defendant's control of the immediate cause of the injury is exclusive; the doctrine cannot be invoked without evidence tending to establish that the injury complained of was caused by someone under defendant's control." *Id.* at 1038.

¶ 74     In these cases, as here, others than the defendant could have caused the injury. The trial court recognized this possibility that the injury could have occurred during Willis's second hospital visit.

¶ 75     For the same reasons, the trial court correctly barred *res ipsa loquitur* regarding Willis' bilateral wrist symptoms. As in her elbow post-surgery, there were no signs of wrist injury.

Willis testified that she had no wrist pain. In addition, evidence suggests her wrist symptoms could have been due to preexisting carpal tunnel syndrome.

¶ 76    Post-surgery, Willis informed her primary care physician that she had been diagnosed with carpal tunnel syndrome, but it had not been confirmed. This diagnosis dovetailed with her previous job involving typing, a repetitive motion, which can lead to carpal tunnel syndrome. Two of plaintiff's expert witnesses, Drs. McAlary and McElveen, along with her treating neurologist and occupational therapist, agreed that carpal tunnel can occur from repetitive motion. Another expert witnesses, Dr. Fernandez, opined that bilateral carpal tunnel syndrome appeared at the wrists, after having performed a physical exam and viewed an MRI report. Due to the presence of evidence that Willis's wrist condition could be the result of preexisting carpal tunnel syndrome, the trial court correctly rejected the *res ipsa loquitur* doctrine. See *Rahic v. Satellite Air-Land Motor Service, Inc.*, 2014 IL App (1st) 132899 (conjecture alone does not suffice where no evidence indicates defendants' negligence as most plausible explanation for injury); *Dyback v. Weber*, 114 Ill. 2d 232 (1986) (same).

¶ 77    The record illustrates how unhampered Willis was at trial. Willis's witnesses testified about the events before, during, and after surgery, and her experts opined based on the medical records. Willis produced her own experts who opined that somehow compression during the surgery could have injured her—either by someone leaning on Willis's arm, improper positioning of her arm on the operating table, or by dropping an instrument on her arm. It is axiomatic that the jury as the trier of fact has the duty to resolve conflicting expert testimony. *Hallowell v. University of Chicago Hospital*, 334 Ill. App. 3d 206, 212-13 (2002). This court does not reweigh witness credibility or substitute our judgment for that of the jury. *Bergman*

*v. Kelsey*, 375 Ill. App. 3d 612, 622-23 (2007). This jury reached its verdict after hearing all the evidence. Willis was not deprived of her day in court. Had the jury been instructed on *res ipsa loquitur*, the jury would have had even more justification for finding for the defendants because under the doctrine, the second event, her hospitalization days after the surgery, would eliminate the inference of the defendants' negligence during the first event, the surgery.

¶ 78    The majority states: "[t]he dissent effectively finds that the trial court did not err by barring the evidence of *res ipsa loquitur* because the jury had no right to believe any of Willis's experts and must believe Dr. Laurito's testimony about a cause he believed possible." *Supra* ¶ 46. This misrepresents the core of my position—as a rule of evidence, the doctrine of *res ipsa loquitur* does not apply under these facts. The jury was the finder of fact, heard all the evidence, and rejected Willis's theory of her case. The jury assessed the credibility of the expert witnesses presented by both sides, and I agree with the majority that "[c]ourts should allow juries to assess the credibility of expert witnesses. See *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 167 (2003)." *Supra* ¶ 46.

¶ 79    In sum, the circumstances under which the doctrine applies are absent. See *Dyback*, 114 Ill. 2d at 242 ("When *res ipsa loquitur* is invoked the plaintiff bears the burden of proving all of its elements. Under the doctrine, the facts of the occurrence show *prima facie* the defendant's negligence if the plaintiff establishes (1) that the occurrence is one that ordinarily does not occur in the absence of negligence and (2) that the defendant had exclusive control of the instrumentality that caused the injury."). *Dyback* requires two elements, and Willis failed to allege and prove the second, *i.e.*, exclusive control of a cause of her injury.

¶ 80                                         Motion *in Limine*

¶ 81          Willis argues that defendants' motion *in limine* to bar *res ipsa loquitur* amounted to a dispositive motion for summary judgment on the first count (*supra* ¶ 51) and circumvented local rule 2.1 (Cook County Cir. Ct. R. 2.1 (Aug. 21, 2000). The majority admonishes the defendants, stating that by "raising the issue as one of more than 100 motions *in limine*, presented less than two days before trial, when the trial judge candidly admitted that she had not read through all of the thousands of pages of depositions, defendants ensured inadequate consideration of the issues involved." *Supra*, ¶ 52.

¶ 82          The record reveals 61 open motions on the day the trial court ruled. Seventeen were agreed motions, and two were withdrawn. Arguments by opposing counsel, both for and against the motion to bar the use of the *res ipsa loquitur* doctrine, cover 10 pages of transcript. The attorneys discussed the depositions at length. The trial court cited *Imig v. Beck*, 115 Ill. 2d 18 (1986), and ruled

> "based on the facts of this case and based on my reading of other cases on *res ipsa* and even the [committee] comments on the jury instructions, I don't think this case is a *res ipsa*. *** It's almost like you're asking the jury to believe, okay the arms were improperly positioned during surgery, external pressure was placed on her arm during the surgery, the surgery took long [*sic*]. So it's almost like one, two, and three; but if you don't believe those, then it's a *res ipsa*."

The trial court found this attempted use of the doctrine to be improper and granted the motion.

¶ 83          Local rule 2.1 states:

"All motions for summary judgment shall be filed and duly noticed for hearing such that the motion comes before the court for initial presentation and entry of a briefing schedule not later than forty-five (45) days before the trial date, except by prior leave of court and for good cause shown or unless a deadline for dispositive motions is otherwise specified in the case management order." Cook County Cir. Ct. R. 2.1(f) (Aug. 21, 2000).

Local rule 2.1 further requires 3 days' notice before presenting the motion and provides an adverse party 28 days to file a responsive memorandum. Cook County Cir. Ct. R. 2.1(d) (Aug. 21, 2000). Willis asserts the trial court "disposed of an entire claim under plaintiff's complaint on the second day of trial, prior to any evidence being presented to the jury and one day after being assigned the case." Willis claims she was denied her Rule 2.1 protections because the defendants brought their motion for summary judgment as a motion *in limine*. But the trial court may excuse compliance with its own rules for "good cause." *Bright v. Dicke*, 166 Ill. 2d 204, 208-09 (1995). Moreover, the suggestion the *in limine* motion serves as a disguise for a summary judgment motion advances a specious argument.

¶ 84    *Res ipsa loquitur* does not constitute a cause of action, even though some courts have so referred to it. *Darrough*, 234 Ill. App. 3d at 1060. "Because Illinois requires fact pleading [citation], *res ipsa loquitur* is often pleaded as a separate claim [citation] and, therefore, has sometimes been referred to as a cause of action [citation]. *Id.*

¶ 85    As I have stated, *res ipsa loquitur* "permits the drawing of an inference as in any other case of circumstantial evidence." *Imig*, 115 Ill. 2d at 30. This permissible inference does not create a presumption of negligence; rather, the trier of fact weighs the strength of the inference of

negligence. *Id.* at 27. "Moreover, the *res ipsa loquitur* doctrine applies only when the facts proved by the plaintiff admit of the single inference that the accident would not have happened unless the defendant had been negligent." *Britton v. University of Chicago Hospitals*, 382 Ill. App. 3d 1009, 1012 (2008).

¶ 86 Even if the motion *in limine* could be characterized as a motion for summary judgment, this court's reasoning in *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7 (1999), guides us. In *Seef*, the trial court granted defendant's motion *in limine* to bar the testimony of plaintiff's expert, finding the testimony was speculative and inadequate to establish proximate causation. *Id.* at 11-12. The next day the trial court granted the defendant's motion for dismissal based on the ruling on the motion *in limine*. *Id.* at 12. On appeal, the plaintiff argued that the motion to dismiss was actually an untimely motion for summary judgment. *Id.* at 17. We noted that regardless, no genuine issue of material fact remained—the plaintiff had no expert testimony regarding the alleged deviation from the standard of care. *Id.* at 18-19. According to *Seef*:

"Assuming *arguendo* that the motion to dismiss was actually a motion for summary judgment, the trial court could properly consider it. Pursuant to Rule 2.1(f) of the rules of the circuit court of Cook County, a motion for summary judgment must be filed at least 45 days before the trial date 'except by prior leave of court and for good cause shown.' Cook Co. Cir. Ct. R. 2.1(f) (eff. April 23, 1992)." *Id.* at 18.

The trial court in *Seef* indicated it would give leave to file a motion for good cause shown. Even if the dismissal violated a local circuit court rule, "that fact is not ground for reversal

where, as here, no injustice has been done to anyone." (Internal quotation marks omitted.) *Id.* The opposite is true here—both sides presented multiple experts at trial.

¶ 87 The underlying principle remains: our reversing the trial court's ruling would not salvage the Willis's claims. In *Seef*, the court stated if it accepted the plaintiffs' argument that the motion to dismiss was an untimely motion for summary judgment and reversed the trial court, the plaintiffs "would ultimately find themselves in the same position they are in now." *Id.* at 20. Without expert testimony proving causation, the trial court would have directed a verdict for the hospital "after having had to waste both its and the parties' time, money and energy on an unnecessary proceeding. '[T]he law does not require the doing of a useless act.' " *Id.* (quoting *Stone v. La Salle National Bank*, 118 Ill. App. 3d 39, 45 (1983)).

¶ 88 In contrast, this court in *Okic v. Fullerton Surgery Center, Ltd.*, 2019 IL App (1st) 181074, recognized that the defendants' motions *in limine* to bar *any* evidence of the surgeon's negligence were not evidentiary rulings but rulings that disposed of an entire theory of liability, namely, that the surgeon negligently performed the surgery or negligently caused the plaintiff's injury or both *Id.* ¶ 78. With no expert evidence as to a surgical standard of care, lay jurors could not evaluate the surgeon's conduct.

¶ 89 But the error in *Okic* was harmless because, as in *Seef*, the plaintiff would have been in the same position at the close of the evidence. *Id.* ¶¶ 82, 85. Willis could not meet the elements of the *res ipsa loquitur* doctrine because during her subsequent hospitalization these defendants did not have exclusive control over all reasonable causes of her injury. The jury did not require inferences to form their opinions of the cause of her injury; the evidence was extensive both as

to what occurred and as to experts' opinions of how her injury occurred. The existence of cause in fact presents a question of fact for the jury. *Young v. Bryco Arms*, 213 Ill. 2d 433, 447 (2004).

¶ 90    The majority states that "[d]efendants cite no case in which the trial court decided on a motion *in limine* whether the plaintiff stated a claim under the theory of *res ipsa loquitur*," citing *Silverstein v. Brander*, 317 Ill. App. 3d 1000, 1005-06 (2000), and *Peterson v. Randhava*, 313 Ill. App. 3d 1, 11-12 (2000). *Supra* ¶ 52. Neither case gives guidance here.

¶ 91    In *Peterson*, the trial court *sua sponte* converted a motion for sanctions into a motion for summary judgment while discovery had been stayed and before any depositions. *Peterson*, 313 Ill. App. 3d at 12. This "deprive[d] the plaintiff of an opportunity to conduct discovery on the relevant issues, present evidence and argue against dismissal." *Id.* Here, when the defendants moved to bar *res ipsa loquitur*, Willis had conducted her discovery, the parties had completed experts' reports and depositions, and, before ruling on the motion, the court gave both parties the opportunity to raise objections and provide case law to support their arguments. Willis did not suffer any prejudice as did the plaintiff in *Peterson*.

¶ 92    In *Silverstein*, defense counsel presented the motion as *in limine* rather than as a motion for summary judgment for "strategic reasons," apparently designed to avoid the notice requirements for summary judgment motions. *Silverstein*, 317 Ill. App. 3d at 1004. This court reversed, finding that mistitling a motion to avoid local notice requirements does not constitute "good cause" to excuse complying with court rules. *Id.* at 1006. Again, even were this a motion for summary judgment, nothing here even hints at such a strategy.

¶ 93    The exclusion of *res ipsa loquitur* from the jury's consideration did not dispose of Willis's entire theory of liability. As demonstrated by the majority's review of the facts, Willis

presented her evidence to the jury, but there was a plausible, alternative explanation for her injuries.

¶ 94    I would affirm the trial court's decision to grant the motion to bar the *res ipsa loquitur* claim and allow the jury's decision to stand.

---

**No. 1-18-0718**

---

| | |
|---|---|
| **Cite as:** | *Willis v. Morales*, 2020 IL App (1st) 180718 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-L-6049; the Hon. Kay Marie Hanlon, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Patricia E. Raymond, Clark M. Raymond, Robert L. Raymond, and Kiley R. Burlas, of Raymond & Raymond, Ltd., of Schaumburg, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Stephen A. Rehfeldt, of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellees Mauricio Morales, Ching-Chong Huang, Paul Kowalczyk, and Kim Price. |
| | James J. Stamos and Julie N. Howie, of Stamos & Trucco LLP, of Chicago, for appellees Jeffrey Flagg and WhichDr Enterprises, Ltd. |
| | David C. Burtker and Peter J. Strauss, of Cunningham, Meyer, & Vedrine, P.C., of Chicago, for appellee David McCormick. |
| | No brief filed for other appellee. |

---